No. 82.—Luke Robinson, plaintiff in error, *vs.* The State of Georgia, defendant in error.

The common-law right of a prisoner to challenge a juror, "*propter affectum*," is not taken away by the act of 1843, prescribing the oath to be administered to jurors in criminal cases: that act only prescribes the *manner* in which the right shall be exercised.

If a prisoner desires the benefit of his right to challenge a juror, "*propter affectum*," he must, under the provisions of the act of 1843, ask the court for the appointment of triers for that purpose, in the manner pointed out by the common law.

When the property in a negro alleged to have been stolen, is charged in the indictment to be the property of the prosecutor, evidence that he was the purchaser of the negro, at sheriff's sale, under the incumbrance of a mortgage, after condition broken, as the property of the prisoner coupled with the lawful possession, was held to be sufficient to maintain the allegation.

This was an indictment against the plaintiff in error for the larceny of a slave named George, the property of Samuel Buffington, senior, who was the prosecutor, tried before Judge Merriwether, in the Superior Court of the county of Baldwin, at August Term, 1846, and which resulted in the conviction of the prisoner.

In the course of empannelling a jury, one Digby was called, and being sworn on his *voire dire*, he was asked the questions prescribed by the act of 1843, to wit: "Have you, from having seen the crime committed,

or having heard any part of the evidence delivered on oath, formed and expressed any opinion in regard to the guilt of the prisoner at the bar?" Which the juror answered in the negative. Then the further question was propounded: "Have you any prejudice or bias resting on your mind for or against the prisoner at the bar?" Which the juror also answered in the negative. Whereupon said juror was offered on the part of the State as competent, when the counsel for the prisoner, with a view further to test his competency, required that he should be asked the further question, whether "he had formed and expressed any opinion as to the guilt or innocence of the prisoner?" so as to ascertain whether the said juror had formed and expressed any opinion in regard to the prisoner's guilt or innocence from report or otherwise, which was objected to on the part of the State, and the objection sustained by the court. A jury of twelve was at length empanneled and sworn, to try said cause, upon the plea of "not guilty," whose qualification and competency were ascertained in the above manner.

Witnesses were then introduced in behalf of the State, who, among other things, proved that the boy George, with Edy, his mother, and several other slaves, was sold at Sheriff's sale, as the property of the prisoner, and the boy George and his mother Edy, and some others, were purchased at said sale, by the prosecutor, in the year 1842, and that George was worth about $500. The boy was missing from the prosecutor's plantation about the first of March, 1846. That George was one of the negroes in controversy, in a suit pending in Baldwin Superior Court between Harper Tucker and the prosecutor, and that he had been levied on, after the prosecutor's purchase of him, by a mortgage *fi. fa.* in favor of said Tucker. As to the portion of the testimony on the part of the State, from which it is supposed the jury inferred the prisoner's guilt, there having been no objection to its admission, it is deemed unnecessary to state it here. The testimony in behalf of the State having been closed, the prisoner's counsel proposed to prove, that when the boy George was sold by the sheriff, he was sold subject to the mortgage of said Harper Tucker, for the purpose of showing that the property in said boy was not in the prosecutor, but in the prisoner, which the court refused to allow, on the ground that whatever title was in the prisoner when the boy was sold, passed to the prosecutor by that sale, as much so as if the prisoner had himself made the sale; and that it was not necessary that the prosecutor should have the absolute and entire property in the negro, to maintain the allegation in the indictment that the negro was his property.

It was then proven, on the part of the prisoner, by one Searcy, that prosecutor's son went for him to go with his dogs and catch two boys, Edward and the said George, that had run away from the prosecutor. Witness went and drove for them, and caught the boy Edward, and struck another track, and pursued it to the river, and down the river some distance. This was a day or two after the boy was missing. Witness did not see the place where the boy went into the river. A few days afterwards, the prosecutor sent for witness, requesting him to go and search for George. Witness went, but did not strike any track, and returned home. The counsel for the prisoner then offered to prove the admission of prosecutor, that the boy George, *in all likelihood, was drowned*

in the river at the time the boy Edward was caught, which being objected to, was repelled by the court, and the counsel were not permitted to put the question.

The counsel for prisoner then offered the mortgage *fi. fa.* in favor of Harper Tucker against the prisoner, which was levied on the boy George after the purchase of him by the prosecutor, with the levy and entry of " clai.n" by said prosecutor thereon, for the purpose of showing that the property in the boy George, at the time of the alleged larceny, was in the sheriff and not in the prosecutor, and thereby to disprove the allegation that he was the property of the prosecutor; which was repelled by the court upon the ground that the mere levy of the *fi. fa.*, without an actual sale under it, did not of itself divest the title acquired by the prosecutor, and the fact of such levy, if true, did not of itself counteract or negative the charge in the indictment, that the said negro George was the property of the prosecutor.

The counsel for the prisoner then tendered in evidence a paper for the purpose of negativing the ownership of the prisoner, which, it was stated to the court by counsel, showed that a claim had been interposed by the prosecutor to the boy George when levied on by the mortgage *fi. fa.*, and that said claim had been withdrawn, and also the forth-coming bond of the prosecutor, by which he had the possession of said negro George at the time of the alleged larceny, which was rejected.

The counsel for the prisoner then offered in evidence a paper, which, they stated to the court, was a bill in equity filed by the prosecutor and Donald M'Donald, the purchasers at sheriff's sale of the mortgaged property, against said Harper Tucker, also a purchaser of another portion of the mortgaged property, for the purpose of compelling contribution between all the purchasers of the mortgaged property to the discharge of the mortgage, and enjoining said levy, the said bill being tendered to disprove the fact of property in the prosecutor. Which was rejected by the court.

To all which decisions of the court below the counsel for the prisoner excepted.

For the assignment of errors, see the decision of the Supreme Court.

KENAN & ROCKWELL, counsel for plaintiff in error.

MR. ROCKWELL argued as follows:

Trial is the investigation of the matter of fact in issue.

The question presented by this record is two-fold. First, as to the mode of examination. Second, as to the facts necessary to be examined.

The mode of examination of a matter of fact by a jury, involves the manner of empanneling that jury; for if the constituent members thereof be not such as the law regards fully competent to determine the issues before them, the jury is defective, and the result of the examination is void.

The grounds of challenge to the polls are ranged under four principal heads by Sir Edward Coke; the third of which, "*propter affectum*," is the one alleged in the assignment of errors to have been denied the prisoner by the court below, in determining the competency of the juror in this case.

This challenge is of two sorts: either working a principal challenge, or to the favor.

A principal challenge is, where there is express favor, or express malice.

The rule of law is, "that a juror must stand indifferent as he stands un-sworn."—*Co. Litt.* 157, *b.*   "*Omni exceptione major.*"

In an old case (1 *Bulst.* 20, cited in *Joy on Jurors,* 169,) upon a trial at bar, a juror was challenged that he had said to one of the parties, "Provide to pay, for if I am sworn I shall give my verdict against you;" he was found not to be indif-ferent and was withdrawn.

The older authorities in the English books seem to recognize the doctrine, that if a juror had formed or expressed his opinion *from his knowledge of the cause,* such an expression of opinion was not incompatible with his legal indifferency; but if such opinion was expressed *without* any knowledge of the cause, it was considered as springing from ill-will, or favor, and the juror was adjudged incom-petent.   Modern cases in the United States, professedly based on the common law, have much expanded the doctrine.

Although the doctrine, in its limited or more liberal application, will equally support the positions assumed in this record, it may not be amiss to consider the earlier decisions upon this question.

Fitzherbert (*Chall.* 22) reports the charge of Babington, J., to the triers in an old case, thus : " If he will pass for one party, whether the matter be true or false, he is favorable.   So if he has said he will pass for one party, if it be for affection he hath to the person and not for the truth of the matter, he is favorable; but if it be for the truth of the matter that he has knowledge of it, he is not favorable."

In the Year Books, (7 *Hen.* 6. *fol.* 25,) the charge of the same judge to the triers, upon a challenge "*propter affectum*" taken in a replevin suit, is given thus : " You will inquire on your oaths, whether the cause be for partiality or affection (*pour l'affection*) that he has to the party, or for the knowledge he has of the mat-ter in issue.   If the cause is partiality for the party, then he is favorable; other-wise, not: and if he has more affection to one than to the other.   But if he has a *full knowledge* of the matter in issue, and if he be sworn he will speak the truth, notwithstanding the affection he hath for the party, then he is not favor-able."—*Joy on Jurors,* 203.

This appears to have been the earlier doctrine on this subject, and although in part overruled by subsequent decisions, was recognized in the case of the *King* vs. *Edmunds,* reported in 4 *Barn.* and *Ald.* 472, which was decided in Easter Term, 1821.

In the case of the *King* vs. *Edmunds,* Abbot, C. J., seems to have been of the opinion, that the declaration of a juror was not a good cause of challenge, unless it be made in terms, or under circumstances, denoting an ill intention towards the party challenging; and cites *Hawk. b.* 2, *ch.* 42, *sec.* 28, in support of the opinion. A reference to the authority, however, fails to support the decision to the extent stated.   Considering the other questions presented in the case of the *King* vs. *Edmunds,* it decides, in effect, that you may not prove by the juror himself, his hostility to the party challenging; admitting, however, that such hostility if proved by other evidence, is a good ground of challenge.

The doctrine laid down by Babington, J., in the cases above quoted, underwent some modification in later times.   Brook lays down the rule, that it is a good cause of challenge that a juryman has reported, if he be empanneled, he will pass for the plaintiff—citing 21 *Hen.* 7, 29 ; (*Chall. pl.* 90.)

In the case of *Peter Cooke,* tried for high-treason, reported 13 *St. T.* 334, it was held not competent to prove by the juror himself anything which tended to his *dishonor;* and Treby, C. J., seemed to consider it a dishonorable thing to express *ill-will* towards a person accused of crime in regard to the matter of his accusation.

In all these cases the question asked of the juror was, directly, if he had not expressed his opinion *adversely* to the prisoner.   But the question sought to be propounded in the court below to the juror in this case, might have been answered in the affirmative, without at all compromising the juror.   Indeed, it seems to have been framed to avoid the perpetually embarrassing investigation, how far

you might examine a juror on his " *voire dire*" without exposing him to discredit : he might have expressed an opinion as to the " guilt or innocence" of the person, without any feeling of *ill-will*, yet he might not, nevertheless, *have stood indifferent*.

Admitting, for the sake of argument, that you may not prove the juror's *ill-will* to the party challenging, by the juror himself, it is by no means clear that it was necessary according to the common law. Indeed, there is strong reason to believe otherwise. The ingredient of *ill-will*, superadded to the opinion formed, never was engrafted on the common law of England. It is expressly enacted in 25 *Edw.* 3, *c.* 3, which, Hawkins says, (vol. 2, c. 43, sec. 27) seems to be made in affirmance of the common law, " that no indictor shall be put on inquests upon deliverance of the indictees of felonies, or trespass, if he be challenged for that same cause by him which is so indicted."—*Schley's Dig.* 124. This statute may have been necessary, because of the application of the principle that the juror's knowledge of the cause would not render him incompetent ; yet Breton, who wrote in the time of Edward 1, asserts that a defendant may challenge a juror *because he was one of those who indicted him*.

It is undeniably true, that the common law required a juror should stand impartial and indifferent between the parties ; he should be without prejudice or bias for or against either ; and jurors are examined as to this point without objection ; nor has the question ever been considered in the least degree reflecting on their honor. But can a juror be deemed impartial or indifferent, who comes to the decision of the matter in issue with his opinion already formed ; and, as far as he is concerned, his verdict already declared ? If the trial by jury be the investigation of the matter in issue by twelve men whose opinions thereon are known and expressed before the investigation is commenced, then is this boasted bulwark of liberty worse than a mockery and a farce. The rules of the common law seem to require that a juror, to be competent to sit in a cause, should not have formed an opinion thereon, and most undoubtedly that such opinion should not have been expressed. Whenever such has been ascertained to be the fact, it has been repeatedly adjudged a ground of *principal* challenge.—*Trials per pais*, 222, 228 ; *Joy on Jurors*, 166 ; 7 *Cowen*, 128. In the court below, the prisoner was precluded from showing the existence of this fact, and restricted within the limitation that the opinion, if formed and expressed, should be based on *his knowledge of the cause*, derived from having seen the crime committed, or having heard the evidence on oath.

The courts in modern times, and particularly in this country, have gone farther than the courts of England to ensure the requisite impartiality and indifferency of jurors. It has been ruled in accordance with the common-law right of challenge, that it is not necessary for the juror to have a fixed and definite opinion upon the matter in issue : it may be hypothetical ; and this will constitute a ground of challenge, either principal, or to the favor, according to the circumstances under which it is expressed.—2 *Dev. & Batt.* 196, 224 ; 11 *Leigh*, 667 ; 14 *Wendell*, 131 ; 7 *Monroe, R. App.* 667 ; 7 *Cranch*, 297 ; 21 *Wendell*, 542 ; 6 *Cowen*, 557 ; 1 *Denio, R.* 308.

In the case of Hughes, *coram* Crampton, J., at the Armagh Summer Assizes, 1841, on trial for murder, the question asked the jurors was, " Have you any opinion with regard to the guilt or innocence of the prisoner ?" One juror stated that at the previous trial he had expressed an opinion ; he was objected to, and the objection was allowed.—*Joy on Jurors*, 191. So in Knapp's case, 9 *Pick.* 499. So in Polly Bodine's case, 1 *Denio, R.* 301.

The challenge " *propter affectum* " must be considered beyond all question as existing in Georgia as late as the 14th May, 1776, was not repealed at the time of the adoption of the Constitution, and consequently secured to the citizens by the terms of that instrument.

The mode of trying a challenge " *propter affectum* " was fixed by the Penal Code of 1833.—14 *Div.* sec. 48. " On all trials for crimes or offences on the criminal side of the court, where the punishment is death, or imprisonment and labor in the Penitentiary, any juror may be put on his *voire dire*, and the following question shall be propounded to him, viz : " Have you formed and expressed any opinion in

regard to the guilt or innocence of the prisoner at the bar ?"  If the juror shall an
swer in the negative, then the following question shall be propounded to him
" Have you any prejudice or bias resting on your mind either for or against th
prisoner at the bar ?"   And if the juror shall so answer these questions as to mak
him a competent juror, the State or the prisoner may nevertheless have the right t
put such juror upon his trial in the manner pointed out by law, and to prove suc
juror incompetent.

This mode of ascertaining the incompetency of a juror was altered by an ac
of the Legislature passed in the year 1843, (*Cobb's Analysis*, 329,) which repeale
the above section, and substituted in lieu of the first question the following, viz
" Have you, from having seen the crime committed, or heard any part of the ev
dence delivered on oath, formed and expressed any opinion of the guilt or inno
cence of the prisoner at the bar ?"

It is material to observe, this last statute has restricted the expression of opinio
by the juror to his *absolute knowledge* of the matter in issue.   The authoritic
already cited establish a juror's knowledge of the matter in issue did not by th
common law disqualify him from sitting in the cause, nor did it constitute a groun
of challenge, either principal, or to the favor.   If a juror had given a verdict be
fore in the same cause, or upon the same matter between other parties, though
good cause of challenge, it could not be proved by the juror himself, *but by the re
cord.—Joy on Jurors.*

The conclusions are deemed just, from a review of the authorities :

1st. That if a juror has formed and expressed any opinion upon the matter i
issue, it is a good ground of challenge " *propter affectum,*" according to the rule
of the common law, and may be either principal, or to the favor ; which may b
proved by the juror himself when sworn on his " *voire dire.*"

2d. That the first question required to be propounded by the act of 1843, if ar
swered in the affirmative, will not elicit the proof that the juror may be subject t
the challenge, " *propter affectum,*" either principal, or to the favor, and is so far
restriction on the trial by jury as used in Georgia at the adoption of the Const
tution.

The second branch of the argument will be devoted to the consideration of th
*facts necessary to be examined.*

The allegation in the indictment is in substance as follows : charging that th
prisoner " with force and arms, a certain negro slave of the value of $500, the
and there the property of Samuel Buffington, Sr., did steal, take and carry away,
It is asserted, on the part of the prisoner, that he was at liberty to disprove th
allegation by showing that the slave was not the property of Samuel Buffing
ton, Sr.

The *kind* of property stolen must be accurately stated in the indictment.—
*Chit. Crim. Law,* 947.   The value also must be expressed, in order that it ma
appear on the face of the record, whether the offence is grand or petit larceny.-
2 *Hale,* 182 ; 3 *Chit. Crim. Law,* 947.

Whenever the owner of the goods is known, the property must be expressl
laid in him.—1 *Hale,* 512 ; 2 *Leach,* 578 ; 1 *Chit. Crim. Law,* 212 ; 3 *ib.* 948 ; 1
*Mass. R.* 217.   A special property is sufficient.—3 *Chit. Crim. Law,* 948.

Such evidence as would defeat a recovery in an action brought by the perso
in whom the property is alleged, is competent to disprove the allegation in the ii
dictment.

The prosecutor in this case could maintain no action to recover the property an
reduce it to his possession, unless he had the legal title to, or the legal right to th
possession of, the property alleged to be the subject of larceny.

The evidence in the court below, established the fact, that the sheriff had levie
upon the slave ; how he was left in the possession of the prosecutor, did not ap
pear ; and the prisoner, by the decision of the Court, was precluded from show
ing.   If, however, the sheriff *legally* left the slave in the possession of the pros
cutor, (as it is presumed in the absence of proof to the contrary,) the prosecuto
had no interest in the negro ; he was the mere servant of the sheriff, provided h
had no claim to the property.—9 *Mass.* 104, 112, 265.

What claim did the prosecutor have to the property, as disclosed by the testimony which was sought to be introduced by the prisoner, but repelled by the court?

The prisoner sought to prove that when the said slave was purchased by the prosecutor, he was sold at sheriff's sale under the incumbrance of a mortgage executed by the prisoner to Harper Tucker.

This leads to the examination of the nature of the property of a mortgagor of personal chattels in the things mortgaged.

A mortgage of personal property vests the legal title to the thing mortgaged in the mortgagee or the assignee, and *he* may bring trover after condition broken.—1 *Hill, S. C. R.* 291; 12 *Wend.* 61.

After the condition is forfeited, the mortgagee of personal chattels has an absolute interest in the thing mortgaged.—8 *John. R.* 76; 7 *Cowen R.* 290; 1 *Pick. R.* 289; 3 *Cowen R.* 200, *n.*; 4 *ib.* 461; 9 *Wend. R.* 80.

After a default in the payment of money secured by the mortgage, the *title* to the property becomes absolute in the mortgagee, and he or his representatives have a right to reduce it into possession.—12 *Wend. R.* 62. The right to reduce is a mere creature of equity, and governed by equitable rules.

In the case of *Thelusson vs. Smith,* (2 *Wheat. R.* 396,) involving the right of priority of payment secured to the United States by an act of Congress, Mr. Justice Washington holds this language : " If, before a right of preference has accrued to the United States, the debtor has made a *bona fide* conveyance of his estate to a third person, *or has mortgaged the same* to secure a debt, or if his property has been seized under a *fi. fa., the property is divested out of* the debtor, and cannot be made liable."

This doctrine is also maintained in the case of *Conard vs. the Atlantic Insurance Company.*—1 *Pet. R.* 356. Mr. Justice Story in that case observes, " It is true that in discussions in courts of equity a mortgage is sometimes called a lien for a debt. And so it certainly is, and something more; it is a transfer of the property itself as security for the debt. This must be admitted to be true at law, and it is equally true in equity, for equity follows the law. It does not consider the estate of the mortgagee as defeated and reduced to a mere lien, but it treats it as a trust estate, and according to the intention of the parties, as a qualified estate and security. When the debt is discharged, there is a resulting trust for the mortgagor. It is therefore only in a loose and general sense that it is sometimes called a lien, and then only by way of contrast to an estate absolute and indefeasible."

It thus appears, that a mortgage of personal property conveys the legal title to the mortgagee. That after default in the payment of the debt secured by the mortgage, the *property* of the mortgagee in the thing mortgaged is absolute, unless there be something in our law that modifies or alters the law as recognized in the other States of the Union. It is submitted that the act of 1830, (*Prin. Dig.* 468,) recognizes and sustains the doctrines above asserted. It became then a material fact to ascertain if the property, when sold by the sheriff at public sale, was encumbered by a mortgage, in order to lay the ground-work of the evidence which would prove a title out of the prosecutor, and in the mortgagee.

The evidence was material in another point of view. It is alleged in the indictment that the slave was of the value of " $500." Certainly it is requisite to prove the value of the property of the prosecutor in the thing stolen. If, therefore, by his purchase, the prosecutor acquired a qualified and special, not absolute, property, the value of that property must be proved.

Goods pawned or gauged for a debt, or leased for years, cannot be taken in execution against a pawner or lessor.—*Dalt.* 146 ; *Watson on Sheriffs,* 182. Subject to the right of the pawnee or lessee, the sheriff may sell the goods so pawned or leased. Such goods cannot, however, be seized, for the pawnee or lessee has no present right of possession.—*Watson on Sheriffs,* 182 ; 8 *East R.* 476 ; 5 *John. R.* 336. Both of which cases recognize the doctrine that an *equitable* interest is not a subject of *seizure* and sale by the sheriff.

The *fi. fa.* issued on the foreclosure of the mortgage was also offered in evidence

and rejected by the court. This document contained the entry of the sheriff that he had levied on the negro slave, the subject of the alleged larceny, as the property of the prisoner. It was material to prove a default in the payment of the money secured by the mortgage; because, on such default, the title of the mortgagee became absolute, and the property of the mortgagor in the slave, which was purchased by the prosecutor at the sale, was absolutely determined. The entries on the *fi. fa.* established two other facts material to the defence : First, That the slave was in the legal possession of the sheriff, and upon a claim having been interposed, might have been left lawfully with the prosecutor as claimant. Second, That the claim had been withdrawn, and of course the possession of the slave reverted to the sheriff.

When a sheriff has duly seized goods under a writ of *fieri facias, he* has such a *special property* in them as to enable him to maintain trespass or trover against any person who may take them out of his possession.—2 *Saunders R.* 47; 1 *Vent. R.* 52 ; *Watson on Sheriffs,* 191. It is not perceived how a conviction on this indictment would bar an indictment against the same party, alleging the property to be in the sheriff.

The fourth ground assigned for error is, that the court erred in rejecting the mortgage *fi. fa.* because the entries thereon proved that the prosecutor was not entitled even to the legal possession of the slave.

It seems, that an action of trover, or even of trespass, brought by the prosecutor against any person who should take the slave out of his possession, could not be maintained. A person cannot sue in trespass, if he be a *mere servant.* *Owen,* 52 3 *Inst.* 103 ; 2 *Saund.* 47, *b, c, d,* cited 2 *Saund. on Plead. and Ev.* 861. The conclusion is therefore warranted, that the evidence which was rejected by the court was material to disprove the allegation in the indictment that the slave, the subject of the alleged larceny, " was the property " of the prosecutor, and of the value of $500.

The examination, therefore, of the matters in fact in issue, was not conducted according to the rules of law.

1st. Because the jury were not empanneled according to law.

2d. Because evidence material to the issue, and conclusive to the defence of the prisoner, was rejected by the court,

The verdict of the jury is therefore erroneous.

John M. Ashurst, Sol. Genl., for the State.

1st. The laws of Georgia declare the competency of jurors. See the oath testing their competency.—*Hotchkiss,* 797, 798.

2d. Challenge at common law, "*propter affectum,*" was predicated on proof. A prisoner is not entitled to examine a juror on his *voire dire,* as to his having formed and expressed an opinion as to his guilt.—1 *Treadaway,* 389 ; 2 *Bailey,* 29

It is not competent for a prisoner to ask a juror whether he has not, previously to the trial, expressed opinions hostile to the prisoner, in order to found a challenge thereon ; but such expressions must be proven by extrinsic evidence.— *Stephens' Crim. Law,* 300 ; 4 *Barn. and Ald.* 491, 502.

3d. The indictment was properly laid, when it charged the property of the negro in Buffington, because an equity of redemption is an *estate,* and not a *right.* —*Coote on Mortgages,* side p. 42 ; 8 *Law Library.*

All the property of a defendant is bound from the signing of judgment.—*Prin. Dig.* 456.

What is property ?—See *Bouvier's Dic.* 381. An estate is property, and therefore subject of sale.

Claimant giving bond is entitled to possession of property.—*Prince,* 438.

4th. A juror is competent, at common law, who has formed and expressed an opinion in regard to the guilt or innocence of the prisoner, unless done with a malicious intent.—*Stephen's Crim. Law,* 300 ; *Joy on Con. &c.* 189, *et seq.*; 4 *Barn. and Ald.* 491, 502.

Robinson *vs.* State of Georgia.

*By the Court*—WARNER, Judge.

The first ground of error assigned in the case is, that " the court erred in refusing to permit the juror, when sworn on his *voire dire*, to be asked if he had formed any opinion as to the guilt or innocence of the prisoner at the bar : because the Constitution of the State of Georgia provides, that 'trial by jury, as heretofore *used* in this State shall remain inviolate ;' and the court by its decision, excluded the prisoner from the benefit of the challenge *'propter affectum,'* which was an *existing ground of challenge at the time of the adoption of the Constitution.*"

That the right to challenge a juror "*propter affectum,*" existed in this State at the time of the adoption of the Constitution in 1798, is readily admitted, (3 *Bl. Com.* 362 ; ) but how the prisoner was deprived of that right, by the refusal of the court to permit him to show such cause of challenge by the juror himself, under the provisions of our penal code, as now amended by the act of 1843, is not so clearly apparent.

The act of 1843 repealed that portion of the act of 1833, which permitted the question to be asked the juror on his *voire dire*, if he had formed and expressed any opinion in regard to the guilt or innocence of the prisoner at the bar ; so that the prisoner had no right to show such cause of challenge by the juror himself, as the court below, in *our judgment very properly ruled.*

It is true, the act of 1843 prescribes certain questions to be propounded to the juror, but it also provides, if he shall answer them in the *negative*, " the State, or the prisoner, may have the right to put such juror on his trial, in the manner pointed out by law, and *prove such juror incompetent.*"

The record in this case shows, the juror answered the questions, required by the act of 1843, in the *negative ;* then it was the privilege of the prisoner to have asked the court for the appointment of triers, for the purpose of showing the juror was incompetent, which does not appear to have been done.   The act of 1843 does not take away the right to challenge a juror "*propter affectum,*" but only prescribes the *manner* in which that right shall be exercised.

The counsel proposed to show cause of challenge, " *propter affectum,*" by the juror himself, but the court very properly decided he could not do so, as the act of 1843 requires triers to be appointed, and the cause of challenge to be shown before them ; either principal cause of challenge, or challenge to the favor.

It does not follow because the court refused the prisoner the right to show cause of challenge, "*propter affectum,*" by the juror himself, the right of such challenge was denied him altogether, for it does not appear he applied to the court for the appointment of triers.

By the common law, the principal cause of challenge was tried by the court, and challenges to the favor only, were tried by triers, appointed by the court.—5 *Bacon's Ab.* 366.

The act of 1843, however, seemed to contemplate when the juror shall answer the questions required to be propounded by it, so as to make him *prima facie* competent, all further investigation, as to causes of

challenge, either principal or to the favor, shall be submitted to triers, and be determined by them.

The second ground of error assigned is, that the court "repelled ·evidence, that at the time of the purchase of the negro slave. (the subject of the alleged larceny,) at. sheriff's sale, by Samuel Buffington, sen., (the prosecutor,) the same was sold under the encumbrance of a mortgage, because such testimony ascertained the fact that the property acquired in and to said negro, by the prosecutor, under said purchase, was not absolute, but limited and *special*, and the prisoner would ,be at liberty to show in his defence, not only the value of such special property, but that the same was determined to disprove the allegations in the indictment, *that said slave was the property of Samuel Buffington, Sr., and of the value of five hundred dollars.*"

The third ground of error assigned by the plaintiff is, that " the court erred, in not admitting the mortgage *fi. fa.*, bill, and accompanying papers—among them the original mortgage, with the decree of foreclosure—when tendered in evidence on the part of the prisoner ; because they went to prove that the equity of redemption in and to said slave was barred and foreclosed ; and the entry by the sheriff thereon proved., that at the time of the alleged larceny, the said prosecutor had no property whatever in said negro, and that he was not entitled even to the legal possession of said negro."

The fourth ground of error assigned upon. the record is, that " the court erred in refusing to ' admit the mortgage *fi. fa.* in evidence, when offered on the part of the prisoner, because the entries thereon established the fact, that the negro slave, the subject of the alleged larceny, had been levied on as the property of the prisoner, and a claim had been interposed by the prosecutor, which said claim being withdrawn, and the levy yet undisposed of, negatived the allegation in the instrument, that said slave was the property of the prosecutor."

It appears the slave George was mortgaged by the prisoner to Tucker. Afterwards, the slave was levied upon by virtue of an execution, issued upon a judgment obtained against the prisoner, which was of later date than the mortgage, and sold at sheriff's sale as the pro· erty of prisoner, and purchased by the prosecutor, subject to the en·· cumbrance of said mortgage, who acquired by such purchase, all the title which remained in the prisoner to said negro ; and when he paid the debt to Tucker, which the mortgage was given to secure, there is nothing which appears on the record, going to show that his title to the slave would not have been good against everybody.

The counsel for the plaintiff in error *assumes* the ground, and makes i, the basis of his argument, that the legal title to the slave was in Tucker, the mortgagee, after condition broken. This court has already decided. that by our law of mortgage, the title to the mortgaged property remains in the mortgagor until foreclosure and sale thereof, in the manner pointed out by statute ; that a mortgage is a security for the debt. The legal. title to the slave enjoyed by the prisoner was divested by the sheriff's sale, and passed to the prosecutor, who was the purchaser, and who thus acquired the possession of him.

It is true, before the title of the prosecutor to the negro was perfect as against Tucker's mortgage, he would be bound to discharge the debt,

which the mortgage was given to secure; to raise the encumbrance created by the mortgage; but with that the prisoner had nothing to do; *his title* to the negro was sold by the sheriff, and purchased by the prosecutor, who had something more than a mere *special property* in the negro as against the prisoner. But if the prosecutor had only a *special property* in the negro, coupled with the *lawful* possession, it would be sufficient to maintain the allegation in the indictment.—*Packard's case, 2d East Pleas Crown,* 653; 1 *Leach,* 357; *Roscoe's Crim. Ev.* 515.

It was urged that the value of the slave was material, that it might appear whether the offence was grand or petit larceny. The 20th section of the 6th division of our penal code declares, " The stealing of a slave is *simple larceny.*"—*Prin. Dig.* 630.

We do not think, therefore, that the mortgage *fi. fa.* and the accompanying papers offered in evidence by the prisoner, would have proved, as is assumed by his counsel in the third assignment of error, " that at the time of the alleged larceny, the prosecutor had *no property whatever* in the negro, and that he was not entitled even to the *legal possession* of said negro;" but on the contrary, are of the opinion the court below decided correctly in rejecting the testimony, for the reason, the prosecutor had such a legal possession of the property under his purchase at sheriff's sale of the defendant's title thereto, as in judgment of law was sufficient to maintain the allegation in the indictment; and the proffered evidence would not negative the same.

We are also of the opinion, the fact that the negro had been levied on by the mortgage *fi. fa.* in satisfaction of the mortgage debt, and claimed by the prosecutor, which claim had been dismissed, did not, in a legal point of view, negative the allegation in the indictment, that the slave was the property of the prosecutor. The prosecutor was the purchaser at sheriff's sale, as we have already seen, and obtained the *lawful* possession of the negro under such purchase, from the sheriff; and when levied on to satisfy the mortgage debt, he claimed him as his property, giving bond and security for the forthcoming of the negro at the day of sale, or when called for by the sheriff. Although the levy was dismissed, yet the prosecutor, as the claimant, was entitled to the possession of the negro for the purpose of surrendering him to the sheriff, in discharge of his bond; and depriving him of that possession, thus lawfully acquired, by the defendant, was wrongful and fraudulent, in the eye of the law.

From the best consideration we have been enabled to give to this case, we are of the opinion that there is no error in the record, and that the judgment of the court below must be affirmed.