## STATE v. PARKER.

No. 6483.   Decided May 11, 1943.   (137 P. 2d 626.)

See 24 C. J. S., Criminal Law, sec. 1922; Larceny by general owner of property in which another has a special interest or right of possession, note, 58 A. L. R. 330; See, also, 32 Am. Jur., 955.

*D. Ray Owen, Jr.,* and *E. LeRoy Shields,* both of Salt Lake City, for appellants.

*Brigham E. Roberts,* Dist. Atty., of Salt Lake City, *Grover A. Giles,* Atty. Gen., and *Herbert F. Smart,* Deputy Atty. Gen., for respondent.

MOFFAT, Justice.

An appeal from a conviction of grand larceny, from the District Court of Salt Lake County. Defendant stands convicted and sentenced to serve from one to ten years in the State prison for stealing his own automobile. The case illustrates the misuse of the criminal machinery of the law in attempting to enforce a civil obligation.

A statement of the facts out of which this case arose may be summarized as follows: Defendant placed his automobile in the hands of a garageman for repairs on February 17, 1941; he paid $30 on account of the agreed price of $60.00; later, on March 15th, he called for the car and found the repair work not completed, the garageman agreeing to work on the car the following day, Sunday, and have it ready for use Monday, the 17th; on Monday defendant called again, the car still was not completed, but was driven to the doorway of the garage by the garageman; after some discussion about payment, the garageman insisted he had underestimated his charge, a new figure of $71 was arrived at to cover the balance due for work done and for labor to be performed and materials to be furnished to complete the job; defendant made out, signed and delivered to the garageman a draft for $71 drawn on himself, payable through the Salt Lake Clearing House; the garageman sent his wife, the owner of the garage, to the bank with the draft (which was left there for collection), and defendant drove away

with his car; further differances arose over the repairs and the payment of the draft, and on Sunday, May 4th, the garageman with his tow car hooked onto defendant's car as it sat parked in the street in front of a church which defendant was attending, and returned it to the garage; defendant then demanded the return of his car, and, that being refused, instituted a conversion action, the result of which is not shown; the garageman then demanded that this conversion action be withdrawn or "he would put defendant over the road" for stealing the car, and about May 27th a complaint was filed charging defendant in some manner (not shown by the record) with criminally issuing the draft, which action appears to have been dismissed; then on June 19th, defendant was arrested and after preliminary hearing bound over to the District Court and released to the custody of his attorney; and, nearly three months after the taking with the automobile in the possession of the garageman, on July 25, 1941, by information filed in the District Court, defendant was charged with the crime of grand larceny, as follows: "That the said Lester Parker, on the 17th day of March, A. D. 1941, at the County of Salt Lake, State of Utah, *stole from Lena Lauriente, one* (1) *automobile*, of the value of more than Fifty ($50.00) Dollars," etc., which resulted in the trial, conviction and sentence appealed from.

103-36-1, R. S. U. 1933, defines larceny as

"the felonious *stealing, taking,* carrying, leading *or driving away the personal property of another.* * * *"

and 103-36-4 provides that grand larceny is committed

"When the property taken is of a value exceeding $50."

The value of what is taken determines the degree of the larceny.

103-36-8, R. S. U. 1933, provides that:

"If the thing stolen consists of any evidence of debt or other written instrument, the amount of money due thereupon or secured to be paid thereby and remaining unsatisfied, or which in any contingency might

be collected thereon, or the value of the property the title to which is shown thereby, or the sum which might be recovered in the absence thereof, is the value of the thing stolen."

It is provided by 52-2-3, R. S. U. 1933, that:

"Every person who shall make, alter or repair, or bestow labor upon, any article of personal property at the request of the owner thereof shall have a lien upon such article for the reasonable value of the labor performed and materials furnished and used in making such article or in altering or repairing the same, and may retain possession thereof until the amount so due is paid."

And the procedure to be followed in foreclosing such a lien is provided by 52-2-4, in part, as follows:

"At any time after thirty days after default made in the payment of a debt secured by lien upon personal property as in this chapter provided such lien may be foreclosed by advertisement, upon the same notice and in the same manner as is provided for the foreclosure of chattel mortgages  *  *  *."

An artisan's lien attaches by operation of law, and while no reference is made to such a lien in the testimony in this case, nor in the instructions to the jury, appellant contends in his brief that Lena Lauriente, the owner of the Independent Garage, and her husband, Dan Lauriente, who managed the business, waived any lien they may have had on the automobile in question by accepting the draft and presenting it to the bank for collection, receiving the bank's receipt therefor. This point is disposed of in the later discussion of the instructions.

It was held in the case of *Cleveland Auto Top & Trimming Co.* v. *American Finance Co.*, 124 Ohio St. 169, 177 N. E. 217, 218:

"If the chattel mortgagee in a replevin action secures possession of the property, that fact cannot deprive the artisan of his claim to a lien for work and labor expended upon the machine. *His lien is not destroyed by the removal of the chattel property from his possession without his consent.* 17 Ruling Case Law, 607; *Gardner* v. *Le Fevre,* 180 Mich. 219, 146 N. W. 653, Ann. Cas. 1916A, 618. In this case,

upon the trial, the judge directed the jury to find that the title to the automobile was in the plaintiff but that the defendant had a lien thereon for the balance due on account. This judgment was affirmed. *It is only a voluntary surrender of possession which deprives the lien claimant of his right to enforce his lien by proper proceedings.*"

In 17 R. C. L. 607, Sec. 16, it is said:

"The holder of the lien may allow the owner of the property to take it into his possession and remove it without prejudice to the lien, if so agreed. *And it is also undisputed that such a lien cannot be destroyed by a removal, without the consent of the lienholder, from his possession.* Accordingly, if without payment of a lienor's claim, the property is taken from his possession and sold under an execution issued against the actual owner, the lienor may thereafter maintain an appropriate proceeding to assert his right of ownership, though he has purchased the property at the execution sale." Citing, *Gardner* v. *LeFevre,* 180 Mich. 219, 146 N. W. 653, Ann. Cas. 1916A, 618; *Brown* v. *Petersen,* 25 App. D. C. 359, 4 Ann. Cas. 980.

Further, in 16 Eng. Rul. Cas. 143, it is said:

"The foundation of lien at common law being possession, *it is, generally speaking, lost by abandonment of possession.*" Citing, *Shaw* v. *Neale,* (H. L. 1858), 4 Jur. (N. S.) 695, 27 L. J. Ch. 444; *Hartley* v. *Hitchcock* (1816), 1 Stark, 408, 18 R. R. 790; *Ex parte Bland,* (1841), 2 Rose 91. *"But the special circumstances under which possession is lost may prevent that consequence; as where the goods are got out of the possession of the person claiming the lien by unlawful means. Dicas* v. *Stockley,* (1836), 7 Car. & P. 587; see also *Ex parte Meux* (1821), 1 Glyn & J. 116; *Wilson* v. *Kymer* (1813), 1 M. & S. 157; *Re Carter, Carter & Carter* (1885), 55 L. J. Ch. 230."

We leave this phase of the case to consider adjudicated cases involving larceny of property by the owner. Interesting notes are gathered in 88 Am. St. Rep. at page 596, from which we quote:

"Under ordinary circumstances, it is impossible for one to commit larceny by taking possession of his own property: *Adams* v. *State,* 45 N. J. L. 448; *People* v. *Mackinley,* 9 Cal. 250; *Commonwealth* v. *Tobin,* 2 Brewst. [Pa.] 570; *State* v. *Fitzpatrick,* 9 Houst. [Del.] 385, 32 A. 1072; *Fairy* v. *State,* 18 Tex. App. 314; *Bonham* v. *State,* 65 Ala. 456; *Alfele* v. *Wright,* 17 Ohio St. 238, 93 Am. Dec. 615.

"Hence one is not guilty of larceny for appropriating a deed made to himself and which is in his possession: *People* v. *Mackinley,* 9 Cal. 250. So a chattel mortgagor cannot steal a mortgage in his possession, executed by himself: *State* v. *Grisham,* 90 Mo. 163, 2 S. W. 223; though the statute involved here related to embezzlement. It has been held that one could not steal his own property from a bailee; *Commonwealth* v. *Tobin,* 2 Brewst. [Pa.] 570. But the rule certainly is very firmly established that a person may be guilty of larceny in stealing his own property when it is done with an intent to charge another with its value: *Palmer* v. *People,* 10 Wend. [N. Y.] 165, 25 Am. Dec. 551. So where one takes his own property with the intent of depriving another of a lien therein, it may be larceny: *State* v. *Stephens,* 32 Tex. 155. [Quod vide.] And the taking of one's own goods from a bailee, if done with the intent to charge the bailee, is larceny: *People* v. *Thompson,* 34 Cal. 671; *People* v. *Stone,* 16 Cal. 369; *State* v. *Fitzpatrick,* 9 Houst. [Del.] 385, 32 A. 1072; *Adams* v. *State,* 45 N. J. L. 448. A pledgor taking his property from the pledgee to deprive the latter of his security therein may be larceny: *Henry* v. *State,* 110 Ga. 750, 36 S. E. 55, 78 Am. St. Rep. 137; *Bruley* v. *Rose,* 57 Iowa 651, 11 N. W. 629. So a mortgagee in possession of personal property has such a title that a felonious taking by the mortgagor would be larceny: *People* v. *Stone,* 16 Cal. 369. And the owner of property sold at a sheriff's sale may commit theft of it: *Robinson* v. *State,* 1 Ga. 563. Where property merely in the possession of a bailee is taken by the owner at the request of an officer who has levied an attachment on it, the offense is not larceny: *Clarke* v. *State,* 41 Neb. 370, 59 N. W. 785. Joint owners cannot steal from each other: *Bell* v. *State,* 7 Tex. App. 25; *Kirksey* v. *Fike,* 29 Ala. 206. Neither can tenants in common: *Kirksey* v. *Fike,* 29 Ala. 206. A part owner of property cannot be convicted for theft of it, unless the person from whom he took it was entitled to the exclusive possession of it at the time of the taking: *Fairy* v. *State,* 18 Tex. App. 314. So one who is entitled to a small part of a sum of money may, nevertheless, commit larceny of the entire amount: *Commonwealth* v. *Lannan,* 153 Mass. 287, 26 N. E. 858, 11 L. R. A. 450, 25 Am. St. Rep. 629."

In *State* v. *Homes,* 17 Mo. 379, 57 Am. Dec. 269, the court said:

"If the defendant takes the property in a fair color of claim or title, though he may be mistaken, yet there is wanting one essential ingredient to the felony, namely, *the felonious intent with which the property was taken; without this intent it is no larceny.*" (Italics added.) See, also, Notes, 57 Am. Dec. 277, and *Greene* v. *Fankhauser,*

137 App. Div. 124, 121 N. Y. S. 1004, the latter case for comparison of facts with the case at bar (although an action for false imprisonment).

And, in *State* v. *Nelson,* 36 Wash. 126 78 P. 790, 68 L. R. A. 283, 104 Am. St. Rep. 945, the court quotes from 18 Am. & Eng. Ency. of Law, 2d Ed., p. 499:

"While one cannot, generally speaking, steal that which is his own, and it has been declared that this is the rule without qualification, yet it is well settled that a chattel, the general ownership of which is in one person, may be in the possession of another by virtue of some special right or title, as bailee or otherwise, so that the taking by the general owner from the person in possession will be larceny, *if done with the felonious intention of depriving such person of his rights* or charging him with the value of the chattel."

In *Bruley* v. *Rose,* 57 Iowa 651, 11 N. W. 629, 630, it was held:

"Larceny consists in stealing, taking, and carrying away the property of another. Code, § 3902. It is said by the plaintiff that the legal title to a pledge remains in the pledgor, and that the interest of the pledgee in the thing pledged is not property.

"There is, however, what is known as a special property, distinguishable from the general ownership. The doctrine is elementary that a bailee has a special property in the thing which is the subject of the bailment. *Belden* v. *Perkins,* 78 Ill. 449; *Woodman* v. [*Town of*] *Nottingham,* 49 N. H. 387, [6 Am. St. Rep. 526]. A pledge is a species of bailment, and the rule as to a special property in the thing which is the subject of the bailment in such case is especially applicable thereto. *Lyle* v. *Barker,* 5 Binney [Pa.] 457; *Hays* v. *Riddle,* 1 Sandf. [N. Y.] 248. * * *

"Having determined that if the horses were pledged to Rose, as there was evidence tending to show, he had acquired a special property in them. and had not released his lien at the time they were taken, it only remains to be determined whether, if the taking was with the felonious design of depriving Rose of his security, Bruley was guilty of larceny. Our attention has been called to no case where it has been directly held that larceny of a thing pledged can be committed by the pledgor. But where a person has a special property in a thing which has been stolen, the property, in indictment for larceny, may be laid in the special or general owner. *State* v. *Quick,* 10 Iowa 451; *State* v. *Somerville,* 21 Me. 14, [38 Am. Dec. 248]; 3 Greenl. Ev.

§ 161; Wharton's Criminal Law, 659. The property may be laid in a bailee even where he has parted with possession, if he did so by mistake. *Regina* v. *Vincent & West*, 9 Eng. L. & Eq., 548.

"In *People* v. *Stone*, 16 Cal. 369, it was held that a bailor may be guilty of stealing his own property, if his intent was to charge the bailee with the property. See, also, *Palmer's case*, 10 Wend. [N. Y.] 165 [25 Am. Dec. 551]. We are satisfied that a pledgor may be guilty of stealing the thing pledged, and that there was evidence tending to show that Bruley committed such crime."

In an action for false imprisonment, *Atchison, T. & S. F. R. Co.* v. *Hinsdell*, 76 Kan. 74, 90 P. 800, 803, 12 L. R. A., N. S., 94, 13 Ann. Cas. 981, the court said:

"The situation presented by the fraudulent taking of goods by their general owner from the possession of one having a special interest in them is unusual, and ignorance of the rights of individuals or the public with reference thereto is not to be taken as evidence of bad faith. The entire testimony, so far as it is binding upon the defendant is consistent with the idea that the plaintiff unlawfully took his property from the car where the company had a right to retain it until the freight charge was paid—an act which the law calls larceny, in this case a felony; that on the discovery of the fraud he was rightfully arrested, at the request of the company's agent; that before he had been detained for an unreasonable time, the stolen goods having been returned, the prosecution was abandoned and he was discharged. These facts would not of themselves give him a right of recovery."

In the case of *People* v. *Cain*, 7 Cal. App. 163, 93 P. 1037, 1038, the court held:

"The law is well settled that the taking of personal property by the general owner with felonious intent from one in possession by virtue of some special right or interest therein constitutes larceny. 'It is larceny to steal cattle from an agister who takes them from the owner to pasture, and the property may be alleged in the information to be the property of the agister.' *People* v. *Buelna*, 81 Cal. 135, 22 P. 396; *People* v. *Thompson*, 34 Cal. 671; *People* v. *Long*, 50 Mich. 249, 15 N. W. 105; 12 Ency. of Plead. & Prac. p. 965; *Palmer* v. *People*, 10 Wend. N. Y. [165], 166, 25 Am. Dec. 551; *State* v. *McCoy*, 89 N. C. 466; *State* v. *Stephens*, 32 Tex. [155], 156. By virtue of the law (Civ. Code, § 3051) Cheney not only had an interest in the heifer to the extent of his lien thereon, but sustained to defendant as the

general owner of a relation which might render him legally chargeable for the value of the cow; and this lien, the enforcement of which depended upon possession, as well as the liability for her value, if imposed, constituted property in the animal which might be feloniously taken from him by the general owner. There is nothing in the Code provisions to which appellant directs attention contrary to the general rule. The phrase, 'personal property of another,' as used in section 484 of the Penal Code, correctly interpreted, means property in the possession of another who is entitled as bailee, or otherwise, to retain possession thereof for some benefit or profit to himself to the exclusion of all others, rather than the absolute ownership defined by section 679 of the Civil Code. Our conclusion is that the taking of property by the general owner thereof from the possession of one who rightfully holds it as bailee or otherwise for benefit to himself, with the intent to charge such bailee with the value thereof, or deprive him of such benefit, constitutes larceny."

The instant case was tried to a jury. Instructions were given orally, upon stipulation, and Instruction No. 5 is here quoted:

"You are instructed that before you can find the defendant guilty of the crime of Grand Larceny, as charged in the information, you must believe from the evidence, beyond a reasonable doubt, each of the following:

"(1) *That the defendant,* Lester Parker, on the 17th day of March, 1941, at the County of Salt Lake, State of Utah, *did steal, take and carry away* one automobile of the value of more than fifty dollars.

"(2) That the defendant, at the time of such stealing, taking or carrying away, had the *felonious intent to steal said article* of personal property, *and of permanently depriving the owner thereof.*

"(3) *That said automobile,* at the time of the taking, if you should so find, *was the personal property of Lena Lauriente.*

"(4) That such stealing, taking or carrying away said automobile was against the will, and without the consent of said Lena Lauriente.

"You are further instructed that the burden is upon the State to prove to your satisfaction beyond a reasonable doubt that each and all of the foregoing elements of the crime of Grand Larceny are present in this case. If the State shall have failed to satisfy your mind on one or more of said elements, then you shall acquit the defendant." (Italics added.)

The other instruction define grand larceny and relate generally to the credibility of the witnesses, weight of the evi-

dence, etc. Not one word in the instructions is said with reference to a bailor or bailee, to a lienholder's rights, or to general or special property in a chattel, and, under the instructions, there is no evidence to justify the jury in finding that the automobile alleged to have been stolen "was the personal property of Lena Lauriente," or that there was *felonious intent* on the part of defendant to commit larceny. It would serve no good purpose to quote at length the testimony supporting this holding.

Sec. 110, Art. 9, chap. 46, Laws Utah 1935, in effect at the time of this alleged offense, provided:

"Any person who obtains the custody of a motor vehicle from the owner thereof or from any person in lawful possession thereof, by any trick, fraudulent or false representation, or any false token or writing, or false personation of another, is guilty of a misdemeanor."

However, this section and Secs. 111 and 112 of the same chapter were repealed by Chap. 50, Sec. 2, Laws Utah 1941, on March 17, 1941 (the same day the alleged offense herein is laid), effective May 13, 1941. If any crime were assumed to have been committed, this statute would have more nearly answered the purpose of the prosecution. But, it has hereinabove been shown that the action brought against defendant for criminally issuing the draft in question was dismissed, which disposes of further consideration of this phase of the case.

The judgment is reversed and the cause remanded for a new trial.

WOLFE, Chief Justice (concurring in result).

I concur in the results.

The defendant sets out with commendable clarity four points on which he seeks reversal. I am unable to discern from the opinion how it answers any of these questions. The points raised by defendant are as follows:

"1. There is no evidence to support the verdict of the jury that defendant was guilty of grand larceny in that the undisputed evidence shows that the automobile taken was the property of the defendant and was not 'personal property of another' within the definition of the crime larceny.

"2. The undisputed evidence shows that the offense which was committed, if in fact defendant is guilty of committing an offense, is a violation of Sec. 110, Chap. 46, Laws of Utah, 1935, a misdemeanor.

"3. The undisputed evidence shows that the value of the lien at the time the car was taken was $30 and, therefore, if in fact a larceny was committed, it was petit larceny and not grand larceny.

"4. The evidence shows that the claimed lien was waived by the acceptance of the sight draft in payment of the obligation."

The opinion rightly states that at common law a bailor could steal his own chattel from a bailee. What he stole was the special property of the bailor in the chattel. Fundamentally the word "property" is derived from the French word "propriete" which in turn was derived from the ■ Latin "proprietas" meaning "that which is proper to anything, a peculiar and characteristic quality of a thing or, formerly, a person, as the properties of a triangle." See Webster's New International Dictionary, Second Edition, Unabridged. In this sense the chattel was perhaps conceived of as having legal properties when referred to its owner, i. e., the property of being disposed of, of being used or consumed. By strict meaning in an attempted analogy to physical properties a chattel had legal properties in respect to the owner rather than the owner "property in" the chattel. Since the right to possess, use, enjoy and dispose of a thing was something not inherent in the thing but only existed in the form of a right in someone to do these things what was perhaps the original conception of the meaning of property as a legal attribute of the thing in respect to a person become inverted to comport with the true factual situation. The person was said to have this property or right in respect to the thing. In this same sense a bailed chattel has, as to the bailee, the legal property of remaining in his possession as a resource for the collection of a debt, and

■

inversely and traditionally the bailee had special property in the chattel. If by stealing a chattel from the owner a person in effect steals his ability to take advantage of the legal properties that the chattel has in respect to him by the same reasoning a bailor or any one else who removes a chattel from the possession of the bailee removes the ability to use the legal properties of that chattel in respect to the bailee. The common law and the cases appear to uphold the proposition that a bailor may commit larceny from the bailee. I see no reason for not following these authorities, many of them which are cited in the main opinion.

By the reasoning above, when the chattel possesses a legal attribute or property in respect to the bailee by which he can retain possession for recourse, such attribute is a property of the whole chattel but its value is as to the bailee only the amount of his indebtedness. Mr. Justice McDONOUGH has developed this matter according to the intent of the legislature as discerned from the gradation of degrees of larceny. I agree with his conclusions in that regard. The third question must therefore be answered that if the jury found only $30 owing, the offense must be considered a misdemeanor.

As to the second point, I am inclined to the opinion that Sec. 110, Art. 9, Chap. 46, Laws of Utah 1935, was designed to reach the offense of obtaining custody by trick, etc., and not larceny by trick. Thus if the evidence revealed a situation where it could not be proved that the defendant intended to steal the car but only to obtain temporary possession a charge might be laid under Sec. 110, but not under the larceny statutes. Sec. 110 was not meant to supersede the larceny statutes which include larceny by trick.

As to the fourth point: If the defendant intended to obtain the car by trick—the trick being to use the sight draft as a device to lull Lena Lauriente and her husband into relaxing vigilance or permitting him to take the car, knowing that the draft would not be cashed, he would be liable for larceny. At this point, it is well to call attention to the

fact that the evidence was not only that "the defendant drove away his car" as stated in the opinion of Mr. Justice MOFFAT, but that when Mr. Lauriente went to the back of the shop, he suddenly jumped in and drove it precipitously out of the garage. The jury might have added this circumstance to the circumstance that Mrs. Lauriente went to the bank with the draft and concluded that Parker gave her to understand that he would wait for her return, it being understood that her errand to the bank was originally for the purpose of collecting the money. Hence, the jury concluded that it was all a trick on Parker's part to get possession of the car. In so concluding the jury must necessarily have concluded that the fact that Lena Lauriente gave the bank the draft for collection was not according to the intent with which she left the garage. It might also have concluded the contrary from the fact that she gave the bank the draft for collection, i. e., that it was the understanding between the Laurientes and Parker that she was to accept the draft as payment. But the jury evidently did not think so; otherwise it could not have found that Parker's driving the car rapidly away constituted larceny. It all sums up to the conclusion that there was evidence from which the jury could have determined that the lien had been waived or that it had not been waived. It chose the latter conclusion. The defendant must, therefore, fail on his fourth point.

The question as to adequate instructions was not raised by the parties but, as Mr. Justice McDONOUGH points out, the lack of an instruction as to the amount of the indebtedness being the measure of grand or petty larceny may not be only an inadequacy but be misleading. Since the first element in Instruction No. 5 used the phrase "did steal, take and carry away *one automobile* of the value of more than fifty dollars" the jury's mind would naturally conclude that the value of the car and not the special property of the complaining witness was the measure of whether the offense was petty or grand larceny. Furthermore, since the case is to be remanded for a new trial rather than for

dismissal, the court should be advised as to the nature of the other instructions which should have been given. We have said the court must not single out any particular piece of evidence and instruct on it. This does not mean that the evidence may not be summed up in an instruction. We have also said that the instructions must present the jury with the law applicable to the case as shown by the evidence, and not give the jury mere abstract propositions of law. *Everts* v. *Worrell*, 58 Utah 238, 197 P. 1043; *Id.*, 20 N. C. C. A. 849; *State Bank of Beaver County* v. *Hollingshead*, 82 Utah 416, 25 P. 2d 612; *Smith* v. *Cannady*, 45 Utah 521, 147 P. 210. Where no piece of evidence is singled out and emphasized I see no better way to instruct in reference to the evidence and in a concrete manner on all theories of the case than to sum up the salient bits of evidence for each party. Where evidence is uncontradicted I see no objection to stating it as a foundation for instructions. Furthermore, where the evidence is in conflict I see no objection to stating the points in which the evidence is in conflict, noting to the jury that it is for it to resolve the conflict. Moreover, where one conclusion must naturally flow from resolving the evidence one way and another definite conclusion flow from resolving its conflicts the other way or drawing inferences of a different sort, it is proper to instruct the jury as to what its conclusions could be under each factual determination, being careful in criminal cases to inform the jury that at all events the determination of the guilt or innocence of the defendant was one purely for its untrammelled discretion, based of course, on reason. There is nothing in the statute which prevents this. 104-24-14 and 104-24-16 require the instructions to be in writing, consecutively numbered by paragraphs and to be read to the jury without oral comment or explanation.

In such a case as the one at bar where a peculiar fact situation may lie within the framework of the concept of larceny, I think the jury should be informed as to the peculiar applicability of the elements of larceny as applied to a

bailor-bailee relationship. And as said before I see no objection to guiding the minds of the jury in its deliberations to all possible reasonable inferances,—being sure to give them all—which it might take from the action of Lena Lauriente in going to the bank with the sight draft under the circumstances, together with her action in handing the draft to the bank for collection upon learning that it would not cash the draft on presentation. The jury could have been told that this latter action could be taken into account with all the other circumstances, including the conversation between the Laurientes and defendant before Mrs. Lauriente left in order to determine whether the Laurientes took the draft in payment, waiving the lien or not.

Also, on the question of defendant's intent and purpose for issuing the draft, I see no reason why all the evidence in that matter pro and con, including the type of draft, the reason for the bank failing to honor it, the manner in which the defendant got in and drove his car out of the garage might not be given the jury with instructions that it was free to draw such inferences as it may find reasonable therefrom.

LARSON, J., concurs in the result.

McDONOUGH, Justice.

I concur in the order reversing the judgment and remanding the case for a new trial.

I likewise concur in the conclusion indicated by the opinion of Mr. Justice MOFFAT that a bailor may commit larceny from his bailee of property, the title to which is in the former. I do not agree that if any crime were assumed to have been committed (under the evidence in light of the verdict) Sec. 110, Art. 9, Chap. 46, Laws of Utah 1935, the statute relative to obtaining custody of property by trick, would more nearly have answered the purpose of the prosecution than the larceny statute. As to the construction of the 1935 statute I concur in what is said relative thereto by Mr. Chief Justice WOLFE.

However, I am of the opinion that the crime committed was only the crime of petit larceny if the balance due on the repair bill was but $30. I am aware that there are cases which disagree with such conclusion; but in the light of our larceny statutes presently to be considered, I am unable to ascribe to the Legislature the intent to make it a felony for the owner of a bicycle of the value of $50 to steal it from a mechanic who has expended $1 of material and labor thereon, while at the same time intend that if the theft had been of a $49 bicycle in which the thief had no property rights the crime would be only a misdemeanor.

In distinguishing degrees of larceny on the basis of value of property taken, the Legislature must have had in mind that theft of property of great value was a more serious crime than stealing something of small value because such taking deprived the owner of more and consequently caused him greater injury; and that as to owners of property in the State a more severe penalty is necessary to protect their property rights of greater value than where things of lesser value are involved. It is no offense against a piano to steal it. Nor is the right of a harmonica interfered with by its asportation. Hence we cannot indulge in speculation as to which, from the standpoint of the object taken, is the greater offense. We must refer the degree of the offense to the assumed injury to the owner. In the example given, the special property right which the mechanic had in the bicycle—the limited right of possession—was worth to him no more than $1. He could not be deprived of greater value than that, because payment of $1 by the general owner would obliterate such special property right.

It is true that if a thief who has no property rights therein, steals property worth $100 from one who has merely the possession thereof, he is guilty of grand larceny even though the one in possession was not even rightfully in possession. However, in such case the thief deprives the true owner of property of value $100. He likewise enriches him-

self to the same extent. But we should not apply such rule so as to say that by stealing property of $100 in value from a lienholder, the general owner is guilty of grand larceny although he deprived the possessor of only $1 in value and enriched himself but to the same extent. The value of "the property taken," as such words are used in 103-36-4, R. S. U. 1933 (U. C. A. 1943), should be held to be but $1.

That such construction of the last cited section accords with legislative intent is borne out by the provisions of 103-36-8, R. S. U. 1933 (U. C. A. 1943), set out in the opinion of Mr. Justice MOFFAT. Thereunder, where the thing stolen is a written instrument evidencing a debt, its value is determined by the amount remaining unpaid thereon. Thus if A gives his note for $100 to B, and after paying to B all except $40 of the debt, A steals the note, he is guilty of only a misdemeanor; because the value of the note is not its face amount but the amount unpaid. Such sum is the greatest amount which B could suffer by its loss; and A could profit by no greater sum by the theft. Suppose, however, that A gave as security for the payment of the loan of $100 a jewel of the value of $100; and, after reducing the indebtedness to $40, he stole the pledged property. If the value of the jewel—the pledged property—is to be the measure of the "value of the property taken," A would be guilty of a felony. On the other hand, if the value of the special property of the pledgee measures the degree of larceny the crime is a misdemeanor. The latter result, in my opinion, is more in accord with the expressed legislative policy and construction of the larceny statute in consonance with such policy gives effect to legislative intent.

Respondent points out, however, that in this case, the jury was justified under the evidence in finding that the lien was for a debt in excess of $50. Nevertheless, no instruction was given in accordance with the theory of value herein expressed, and under the instructions given the jury could have returned its verdict of guilty of grand larceny though the jurors believed from the evidence

that the lien was for an amount less than $50. Hence, a new trial should be ordered.

WADE, J. I concur.

The instructions did not submit to the jury the real question which the evidence presented, and there was no evidence from which the jury could find the questions submitted to the jury against the defendant. As indicated by Mr. Justice MOFFAT, a person may commit larceny of his own property where the property is taken from the possession of another who has a lien thereon, the taking being without the consent of the lienholder, and done with the intention of depriving him of his lien. There was sufficient evidence to go to the jury on this proposition under proper instructions, therefore a new trial should be granted.

I agree with Mr. Justice McDONOUGH that the value of the property stolen cannot exceed the amount of the lien which the lienholder has against it at the time of taking. Here it would be the reasonable value of the services and materials which the lienholder had expended on the car prior to the taking, after deducting the amount which had been paid thereon. In case this amount did not exceed $50 it could only be petit larceny.