KELLOGG, Assignee, Appellant, vs. COSTELLO and others, Executors, Respondents.

*April 16 — May 1, 1896.*

*Statute of frauds: Conditional sale: Signature of "parties:" Debtor and creditor: Reference: Practice.*

1. One who agrees to raft and tow logs to his mill and saw them into lumber, and to sell the lumber for the account of the owner, retaining from the proceeds the cost of rafting and towing the logs and a commission for his services in manufacturing and selling the lumber, is a factor, who may sell in his own name; and a contract of conditional sale by him of such lumber, if signed by him and by the vendee, is signed by "the parties," within the meaning of sec. 2317, R. S.

2. In an action for conversion of lumber, brought by an assignee for the benefit of creditors, the answer alleged that the contract under which plaintiff's assignor bought the lumber reserved title in defendant until payment, and that payment had not been made. Said contract had not been filed until about two months after it was made, and during that time a part of the lumber had been delivered. There was no evidence that the claim of any creditor had accrued during said two months on the faith of the assignor's supposed ownership of the lumber, but near the close of the trial plaintiff, on the ground that many claims had so accrued, moved for a reference to ascertain them. *Held*, that the motion was properly denied. If, for the purpose of an attempt to defeat the

contract by evidence of such claims, the plaintiff was entitled to some delay or consideration at the hands of the court, he should have moved for a continuance, not for a reference.

APPEAL from a judgment of the circuit court for Douglas county: R. D. MARSHALL, Circuit Judge. *Affirmed.*

This action is to recover the value of a quantity of lumber alleged to have been converted by the defendants' testator. The action was tried by the court without a jury, and at the conclusion of the trial the following findings of fact were made, all of which are sustained by the evidence:

"*First.* That prior to the 14th day of August, 1891, the plaintiff's assignor, John Watkins, was engaged in the execution of a contract with the city of Superior for the paving of a portion of John avenue, in said city; that said work was in progress on the 3d day of May, 1891, and continued up to the 14th day of August, 1891; that on the said 14th day of August said John Watkins duly made an assignment for the benefit of his creditors to the plaintiff, who duly qualified and entered upon his duties as such assignee on said day.

"*Second.* That on and prior to the 3d day of May, 1891, J. J. Costello [defendants' testator] was the owner of the lumber described in the complaint.

"*Third.* That on the 3d day of May, 1891, the following contract was made and entered into:

"'This agreement by and between the Huntress & Brown Lumber Company, of Duluth, St. Louis county, Minnesota, party of the first part, and John Watkins, of Superior, Douglas county, Wisconsin, party of the second part. The said first party agrees to sell to the second party forty thousand feet of lumber, more or less, as second party may require, to complete the paving of John avenue in the city of Superior, Douglas county, Wisconsin, at the rate of ten dollars and ten cents ($10.10) per thousand feet delivered on the track of the St. Paul & Duluth Railroad at West Su-

perior; the same to be delivered as required each month; that the second party agrees to purchase the said lumber, and pay therefor the price hereinbefore specified, payment to be made as follows, to wit: Seventy-five per cent. of the amount due for lumber delivered the first month under this contract to be paid on the 10th day of August, or as much sooner as second party may receive his money from the city of Superior under his contract for paving said John avenue; the balance, or twenty-five per cent. of amount due on each month's delivery, or full payment under this contract, to be made not later than the 10th day of September, 1891. And it is expressly agreed and understood that in case of failure on the part of the second party to make payments, or any payment, as herein provided, the first party may discontinue further delivery until payment is made. And it is further expressly understood and agreed that the title to the lumber hereby agreed to be sold by the first party shall be and remain in said first party until the purchase price is paid and all conditions of sale complied with. The quality of the lumber hereby contracted to be sold shall be such as will suit the inspector appointed by the city.

"'Witness our hands and seals this 3rd day of May, 1891.

"'HUNTRESS & BROWN LUMBER COMPANY. [Seal.]

"'JOHN WATKINS.                          [Seal.]'

"*Fourth.* That in the making of said contract the said Huntress & Brown Lumber Company were acting for, as the agent of, and on behalf of, the said J. J. Costello, who was the real owner and party in interest, and that the said contract as made by the said Huntress & Brown Lumber Company was made for the use and benefit of the said J. J. Costello, and that the said John Watkins at that time knew that the lumber which he was purchasing under said contract belonged to said J. J. Costello.

"*Fifth.* That the lumber described in the complaint was

delivered by the said J. J. Costello to the said John Watkins under said contract on John avenue in the city of Superior; all of said lumber having been delivered prior to the 14th day of August, 1891.

"*Sixth.* That the said contract was duly filed in the office of the city clerk of the city of Superior, where said lumber was situated, and where said John Watkins resided, on the 27th day of July, 1891.

"*Seventh.* That no part of the purchase price for said lumber has ever been paid.

"*Eighth.* That on the 15th day of August, 1891, the said lumber was taken under a writ of attachment issued out of this court in an action wherein the Chapin-Wells Hardware Company was plaintiff, and the Huntress-Brown Lumber Company was defendant; that the defendant in this action, claiming said lumber as his, because the same had never been paid for, took possession of the same, and appropriated it to his own use.

"*Ninth.* That the amount of lumber so taken was 409,047 feet, board measure, of the value, where it then lay, of $10.60 per thousand, or the sum of $4,335.89."

In addition to the facts found as above, it appeared without dispute that the contract by which the Huntress & Brown Lumber Company acquired the right to sell the lumber in question was made in Minnesota, and contained the following provisions:

"Whereas, said party of the first part is the owner of certain pine saw logs, 44,312 in number, and containing 2,684,166 feet, board measure, of lumber, according to the scale thereof duly made by George F. Ash, surveyor general of the Fifth district of Minnesota, which said logs are now situate and banked on the shore of Lake Superior, about one and one-half miles east of Lester Park, in said county of St. Louis, marked 'A. V.' upon the ends thereof, and being the same logs heretofore sold to said first party by E. J. Amory, by

bill of sale dated April 1st, 1891; and whereas, said first party is desirous of having said logs sawed into lumber, in order to be able to dispose of the same to the best advantage:

"Now, this agreement witnesseth: The said party of the second part, in consideration of the premises and the moneys to be paid by said first party as hereinafter set forth, hereby agrees: (1) That it will cause said logs to be rafted and towed from the place where the same are now to the lumber mill of said second party in the village of West Duluth in said county. (2) That it will cause all of said logs to be sawed into lumber in good, workmanlike manner and to the best advantage, and will cause all of said lumber not sold from the saw to be properly piled in its yards in said village of West Duluth. (3) That it will sell the said lumber, either from the saw or from its yard, to the best advantage, for the account of said first party, and, in all cases where such sales are not made for cash, will submit the terms of sale and the manner of payment to said first party for his approval before closing any sale other than for cash. (4) That it will cause all lumber not sold from the saw and piled in its yard as aforesaid to be insured in good, responsible companies, for the benefit of said first party. (5) That it will accept and receive in full payment and satisfaction for the services rendered by it hereunder in rafting and towing said logs, sawing the same, piling lumber not sold from saw, making sales, and carrying insurance, as aforesaid, the moneys following: 1st. The sum of sixty (60) cents per thousand for rafting and towing said logs, being the actual cost of rafting and towing said logs to the mill of said second party. 2d. The net amount realized by said first party from the sale of said lumber, after deducting the sum of $1,610.49 so paid for towing and rafting said logs as aforesaid, and the sum of $15,836.57, being $5.90 per thousand for said logs. It being the intention of the parties hereto

that said first party shall receive the sum of $5.90 per thousand, net, for said logs; that said second party shall be reimbursed for the amount paid for rafting and towing said logs as aforesaid; and that the amount realized from said logs over and above said two items shall be the compensation and commission of said second party for handling, sawing, piling, selling, and insuring said lumber as aforesaid.

"And said party of the first part, in consideration of the premises and the agreements herein contained to be kept and performed by said second party, hereby agrees that said second party shall receive out of the first moneys realized from the sale of lumber as hereinbefore provided the said sum of $1,610.49, expended by it for rafting and towing said logs, and that after the payment to him of the sum of $15,836.57, with interest at the rate of eight per cent. thereon after thirty days from the date hereof, being the sum of $5.90 per thousand for said logs, the second party may retain the remainder realized from the sale of said lumber as compensation and commission for its services under this contract.

"It is further understood and agreed by and between both of the parties hereto that the title to no part of the logs herein mentioned shall pass to said second party by reason of this contract, but that said logs, and the lumber sawed therefrom, shall continue to be the property of said first party until sold to other parties for cash or on terms approved by him, and that all lumber not sold from the saw shall be properly piled in the yards of said second party, marked 'A. V.,' and insured in name of said first party, and for his benefit, by said second party."

It further appeared that, although this contract was reduced to writing and signed three days after the contract between the Huntress & Brown Lumber Company and Watkins, a verbal arrangement to the same effect had been previously made, and it was fully explained to Mr. Watkins when he made his purchase.

·From judgment of dismissal of the complaint the plaintiff appealed.

For the appellant there was a brief by *Kellogg & Durley,* and oral argument by *W. B. Kellogg.*

For the respondents there was a brief by *Ross, Dwyer & Hanitch,* and oral argument by *W. D. Dwyer.*

WINSLOW, J.   The main question in the case is whether the contract of conditional sale of the lumber in question entered into between the Huntress & Brown Lumber Company and the plaintiff's assignor May 3, 1891, and filed July 27th following, satisfies the statute (sec. 2317, R. S.) which provides that no contract of sale of personal property, by which the title remains in the vendor and the possession in the vendee until the purchase price is paid, shall be valid as against any person save the parties and those having notice thereof, unless it be in writing subscribed by *the parties,* and filed in the office of the city clerk.   Had the Huntress & Brown Lumber Company owned the lumber when this contract was made, there would be no question as to the validity of the contract, after its filing in the proper office; but it is vigorously claimed that because the Huntress & Brown Lumber Company were simply agents, and the real title remained in Costello, who did not sign the contract, it follows that the statute requiring the contract to be signed by "the parties" has not been complied with, and the contract is invalid, as against the plaintiff.   *S. L. Sheldon Co. v. Mayers,* 81 Wis. 627.   We are satisfied, however, that this contention ought not to prevail.   The Huntress & Brown Lumber Company were not simply brokers for the sale of this lumber.   They were agents who had an interest in the property.   They had possession of the lumber, with power to sell and retain their commission and cost of rafting and towing.   Such agents are called "factors," and their rights and powers are more extensive than the powers of a mere broker.   They have a special property in the goods, and a

lien upon them for their commissions. They may sell for the principal in their own names, and sue in their own names for the price. *Edgerton v. Michels,* 66 Wis. 124, and cases cited. Such being the case, it is difficult to see why the contract in question does not satisfy the law. In contemplation of the law the factor is the party. He has a special ownership of the property. He may sell in his own name and sue in his own name, and the written contract which he has made is simply a contract which the law authorizes him to make, and in making it he effectually represents both himself and his principal. The purpose of the law is manifestly to place on record the fact that one who has the possession and apparent ownership of property is not in fact the owner, so that parties dealing with such person may have the means of ascertaining the fact that he is not the owner, and thus may not be misled into extending credit on the strength of such apparent ownership. This purpose is as fully subserved, under the circumstances of this case, by the contract in question, as though it had been signed by Costello himself. We hold that this contract has been, in legal effect, subscribed by "the parties" to the sale.

It will be observed from the statement of facts found that the contract was executed May 3, 1891, but that it was not filed in the office of the city clerk until July 27, 1891, and that the lumber was all delivered prior to August 14, 1891, when Watkins made his voluntary assignment to the plaintiff. It does not appear, however, when delivery was begun, nor how rapidly it was delivered, nor how much was delivered prior to the filing of the contract. The only witness on the question says, "It was delivered along from the time the contract was entered into until some time in August, or it may have been July." There was no evidence produced or offered by the plaintiff to show that the claims of any of Watkins's creditors accrued between May 3d and July 27th on the faith of Watkins's supposed ownership of

Kellogg vs. Costello and others.

the lumber, but near the close of the trial the plaintiff moved for a reference to ascertain the number of creditors whose claims accrued between said last-named dates on the strength of Watkins's ostensible ownership of the lumber, claiming that there were perhaps sixty of such creditors. The motion was denied, and error is alleged on this ground. We know of no practice of this kind. Certainly this court will not reverse a judgment for failure to grant a reference asked for in the midst of a trial, save under exceptional circumstances not appearing here. The plaintiff had brought his action and gone to trial. He was apprised by the answer that it was claimed by the defendant that the title of the lumber had never passed. Reasonable diligence in preparing for trial would seem to require a thorough examination of the files of the office of the city clerk, and such an examination would have revealed the contract relied upon by the defense. If this contract could be defeated by showing that the claims of certain creditors accrued before its filing, the plaintiff should have been prepared to show these facts before going to trial. But if the plaintiff was taken by surprise, as he now claims, and made a case showing himself entitled to some delay or consideration at the hands of the court, his proper motion would undoubtedly be a motion for continuance, instead of a motion for a reference.

There are no other questions which require attention.

*By the Court.*— Judgment affirmed.

MARSHALL, J., took no part.