GARDNER *v.* LE FEVRE.

1. ASSIGNMENTS—LIENS—BAILMENTS—MECHANICS' LIENS FOR REPAIRS.

    The lien of an automobile repair man for repairs and a tire furnished to the owner of an automobile is assignable and enforceable in favor of the assignee who obtains possession of the machine. 3 Comp. Laws, § 10054 (5 How. Stat. [2d Ed.] § 12704).[1]

2. SAME—FREIGHT CHARGES—PAYMENT, APPLICATION OF.

    While an item for freight paid by the garage owner was not assignable as a part of the account, it could be treated as paid by the proprietor of the automobile out of $75

---

[1] As to the right of the owner of a garage to a lien, see note in 1 L. R. A. (N. S.) 240.

which had been advanced by the owner on account, and which more than covered the freight.

3. SAME.
   Although defendant may not have had a lien for an extra tire furnished for the automobile, he was entitled to a common-law lien on the tire for its value.

Error to Muskegon; Sullivan, J. Submitted January 20, 1914. (Docket No. 118.) Decided April 7, 1914.

Replevin by John H. Gardner against George Le Fevre for an automobile. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Turner & Turner,* for appellant.

*William Carpenter,* for appellee.

MOORE, J. In 1911, the plaintiff, who owned an automobile, a Thomas flyer, then at Tecumseh, Mich., made an arrangement with one Eyke, who owned a garage at Muskegon, to the effect that the automobile would be shipped by rail to Muskegon, and would be received by Mr. Eyke and put in repair for the plaintiff. The automobile was shipped, and upon its arrival in Muskegon Mr. Eyke paid freight upon it to the railroad company, amounting to $33.60. He also furnished an extra tire, which was strapped into the receptacle for extra tires on the side of the machine. The charge for the tire was $50.75.

All this was done prior to September 15, 1911, at which time a settlement was made between Mr. Gardner and Mr. Eyke, and $75 was paid on the account, leaving a balance of $171.60. Mr. Gardner was an actor, going about from place to place, and it was agreed at the time of settlement that the machine should remain for the present with Mr. Eyke, and that Mr. Gardner should pay storage at the rate of $1 a week until he should pay the account and take

the car away. Later Mr. Eyke went out of business and assigned his account and claim to the defendant. The plaintiff made a demand upon the defendant for the automobile, without offering to pay the account. The defendant declined to deliver the machine until the account was paid, and replevin was brought. Upon the trial the judge directed the jury to find that the title to the automobile was in the plaintiff, but that defendant had a lien thereon for the balance due on account, with interest amounting in all to $164.85, and a verdict and judgment was so entered. The case is here by writ of error.

It is claimed the right to enforce a lien cannot be assigned, citing *Caldwell* v. *Lawrence*, 10 Wis. 331, and *Pearsons* v. *Tincker*, 36 Me. 384. Whatever else may be said of these cases, we think they are not the law of this State. Section 10054, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 12704), recognizes the right to assign choses in action and other property rights. See cases cited in note to this section. In *De Witt* v. *Prescott*, 51 Mich. 298 (16 N. W. 656), Justice CAMPBELL, speaking for the court, said:

"The more important allegations of error relate to the rulings of the court as to what circumstances would relieve defendants from responsibility for the result of the replevin suit, and discharge them from any lien which may have existed. And several of the charges and refusals complained of are connected with the alleged waiver of the lien, by allowing the lumber to be shipped to Welch & Co.

"The court below held that any delivery of the lumber by Eames to Welch & Co. would discharge the lien, unless preserved by agreement, and that no such agreement would bind defendants or sustain the lien, so far as their responsibility to discharge or defend against it was concerned, unless made with their consent or ratification. This doctrine was laid down very broadly, and it was also intimated that an agreement to remove the lumber from this into another jurisdiction might be treated as fraudulent and injurious

to defendants. And the court refused to charge that such an agreement, made without fraudulent intent and with no design to injure defendants, would not be of itself a fraud on them.

"We have not found authority for any such unqualified doctrine, and no cases were cited on the argument sustaining it. It is quite uniformly held that an unconditional surrender of possession, or conduct showing a design to discharge the lien, or plainly inconsistent with it, will usually put an end to it. But it seems equally clear that the holder of the lien may allow the owner of the property to take it into his possession and remove it without prejudice to the lien, if so agreed. *Wheeler* v. *M'Farland,* 10 Wend. [N. Y.] 318. And it is also undisputed that such a lien cannot be destroyed by a removal, without the consent of the lienholder, from his possession. And in *Nash* v. *Mosher,* 19 Wend. [N. Y.] 431, Cowan, J., in reviewing the authorities, comes to the conclusion that the holder of a possessory lien can transfer the lien with the possession, as other valuable rights may be assigned."

In this case it is clear Mr. Eyke did not intend to part with his possession and the lien for the benefit of the plaintiff. On the contrary, he assigned the claim and delivered the automobile into the possession of the defendant, to be held by him until the claim was paid.

It is claimed a lien cannot be asserted for the freight paid. We do not think it necessary to say whether, if nothing had been paid by plaintiff on the account, the lien could be enforced. As a matter of fact $75 was paid after the freight bill was paid, and as the amount paid for the freight was the first item of Mr. Eyke's claim, the payment could well be applied upon the freight bill, which it would more than pay. *People, for use of Holmes,* v. *Sheehan,* 118 Mich. 539 (77 N. W. 88) ; *People, for use of C. H. Little Co.,* v. *Grant,* 139 Mich. 26 (102 N. W. 226).

It is said it was error to hold that the lien attached for the extra tire furnished. Section 10747, 3 Comp.

Laws (5 How. Stat. [2d Ed.] § 13805), is as follows:

"When any person shall deliver to any mechanic, artisan or tradesman, any watch, clock, article of furniture or jewelry, implement, clothing or other article of value, to be altered, fitted or repaired, such mechanic, artisan or tradesman shall have a lien thereon for the just value of the labor and skill applied thereto by him, and may retain possession of the same until such charges are paid."

One familiar with automobiles and the use made of them would regard an extra tire as part of a properly equipped automobile. A prudent, experienced owner of a Thomas flyer would hardly venture away from home with it without carrying an extra tire. It will be noticed the language of the statute is "to be altered, fitted or repaired." We think, when Mr. Eyke fitted this automobile with an extra tire, which became a part of the outfit, the lien given by the statute attached.

We think it not necessary to discuss, although they have had our attention, the other assignments of error.

The judgment is affirmed.

BROOKE, J., concurred with MOORE, J.

OSTRANDER, J. In my opinion, plaintiff has no lien upon the automobile for the price of the extra tire, nor has he any lien under the statute relied upon for the price of the tire. I agree with the result announced in the opinion of Mr. Justice MOORE for the reasons he gives, and the further reason that plaintiff had a lien at common law upon the tire for *its* value.

McALVAY, C. J., and KUHN, STONE, BIRD, and STEERE, JJ., concurred with OSTRANDER, J.