TRI-COUNTY FINANCE, INC., Respondent, vs. MILLER, Appellant.

*May 4—June 8, 1954.*

For the appellant there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill, Jr.*

For the respondent there was a brief and oral argument by *O. A. Stolen* of Madison.

CURRIE, J. Inasmuch as plaintiff's conditional sales contract was duly filed in the office of register of deeds in the county in which Reuter had kept the hogs following his purchase of them, plaintiff had fully complied with the provisions of sec. 122.06, Stats., which require that the conditional sales contract, or copy thereof, be filed in the office of register of deeds in the county in which the goods are first kept for use by the buyer after the sale. Sec. 122.05 constitutes such filing to be constructive notice to all third persons who attempt to deal with the property described in such a contract, provided that the contract, or a copy, has been so filed within ten days after the date of the making of the conditional sale. The plaintiff's cause of action against Miller is based upon the theory that there was a wrongful conversion of the 10 sows as a result of his purchase of such hogs from Reuter, inasmuch as title to such hogs was reserved in the plaintiff pursuant to the duly filed conditional sales contract.

Counsel for Miller contends:

(1) That the conditional sales contract was void because it is claimed that plaintiff did not have title to the hogs at

the time the conditional sales contract was entered into between it and Reuter; and,

(2) Even if such contract were valid, Miller was discharged from any liability to plaintiff by operation of law as the result of plaintiff entering into the extension agreement with Reuter under date of July 11, 1949, after plaintiff learned of the sale of all 26 hogs by Reuter.

In support of the first of such two contentions, a number of cases are cited by defendant's counsel from other jurisdictions holding conditional sales contracts to have been void because the seller under the contract did not have title. However, in such cited cases the title was already vested in the buyer prior to execution of the contract and the conditional sales contract was employed as a device to secure a loan. Therefore, in such cases the device of a conditional sales contract was improperly resorted to when a chattel mortgage should have been used. These cases are not in point because Reuter did not have title to the hogs at, or prior to, the time the conditional sales contract was entered into with plaintiff.

The terms of the Metcalf auction required the purchaser to pay cash, unless the plaintiff, who managed the auction for Metcalf, arranged for a sale on credit. At the time the auctioneer knocked down the 26 hogs to Reuter, who was high bidder for $1,350, no title passed to Reuter. The time when title passes between a seller and buyer depends on the intention of the parties. Sec. 121.18, Stats. In case of sales for cash, title does not pass until the purchase price is paid. 46 Am. Jur., Sales, p. 611, sec. 446; and see cases annotated under 1 U. L. A., Sales, p. 8, sec. 18, note 20. When Reuter approached plaintiff to arrange for a sale on credit, title, therefore, was still in the owner Metcalf, and not in Reuter. Plaintiff had authority from Metcalf to make a sale on credit to Reuter so long as plaintiff paid Metcalf the purchase price in cash, less plaintiff's commission of seven per cent. Under such facts we have no difficulty in holding that Metcalf's title

passed to plaintiff rather than to Reuter so that plaintiff was a proper seller of the hogs within the meaning of sec. 122.01 (9), Stats.

This court in *Kellogg v. Costello* (1896), 93 Wis. 232, 67 N. W. 24, held that factors, who had possession of lumber with power to sell and retain out of the proceedings their commission and the cost of rafting and towing, had the right to sell the lumber under a conditional sales contract in which the names of the factors were inserted as sellers.

In *Carter v. Seaboard Finance Co.* (1949), 33 Cal. (2d) 564, 203 Pac. (2d) 758, the defendant finance company had possession of certain commercial motor-vehicle equipment owned by other parties which it was authorized to sell. It sold such equipment to the plaintiff under an instrument in the form of a chattel mortgage but which under the California statute constituted a conditional sales contract. Plaintiff in that case advanced the same contention that is made in the instant case, *i. e.*, that the contract was void because the "seller" did not have title. However, the California court held that the seller under a conditional sales contract need not be the owner and that, inasmuch as the defendant had authority from the owners to make a binding sale which would pass title, the defendant had authority to enter into a conditional sales contract as seller.

We deem that the decisions in both *Kellogg v. Costello, supra,* and *Carter v. Seaboard Finance Co., supra,* support our conclusion that plaintiff had sufficient title in the hogs at the time that the conditional sales contract was entered into to authorize it to insert its name as seller in such contract, and, therefore, that the contract was not void for the reason of lack of title in plaintiff.

This brings us to the second contention advanced by defendant, *i. e.*, that the extension agreement entered into between plaintiff and Reuter on July 11, 1949, operated to release the defendant Miller from any liability arising out of

his wrongful purchase from Reuter of the 10 sows covered by plaintiff's conditional sales contract.

Where a third party purchases personal property from the vendee under a conditional sales contract, title to which property is retained by the vendor named in such contract, the vendor is entitled to maintain a cause of action of trover or conversion against such third person. See Anno. 73 A. L. R. 799, at page 804 *et seq.* Therefore, plaintiff in the instant case was entitled to maintain its action for conversion against the defendant Miller, unless the extension agreement of July 11, 1949, entered into between plaintiff and Reuter, constituted a waiver by plaintiff to so proceed against Miller, or an election by it of an inconsistent remedy.

The original conditional sales contract between plaintiff and Reuter contained an express provision authorizing the making of extensions or renewals of the contract without any loss of rights to the seller. Even without such a provision, a renewal or extension of time of payment of a conditional sales contract does not constitute a waiver by the vendor of his reservation of title to the goods covered by the contract. Anno. 13 A. L. R. 1044, 1049, and 55 A. L. R. 1160. Also see cases annotated, 2A U. L. A., Conditional Sales, p. 173, sec. 127.

However, in the instant case, at the time the extension agreement of July 11, 1949, was entered into, plaintiff then knew that Reuter had sold and disposed of all the hogs covered by the contract. Nevertheless, in spite of such knowledge, time of payment was extended by reason of the extension agreement over a period of twenty-nine months from July 11, 1949. The inclusion of interest in the total amount which Reuter agreed to pay under the extension agreement constituted sufficient consideration to make the extension agreement a binding contract between plaintiff and Reuter. As a result of such extension agreement plaintiff had no right to retake the hogs from Miller and the other two subvendees,

or to sue them for conversion, so long as Reuter made his monthly payments under the extension agreement. Thus plaintiff by its own act of agreeing to the extension agreement tied its own hands for twenty-nine months from proceeding against Miller and the other two subvendees, unless Reuter breached the extension agreement by failing to make his required monthly payments.

We are constrained to conclude that plaintiff by entering into the extension agreement waived any right to proceed against defendant Miller by electing to look exclusively to Reuter for payment of the balance owing on the conditional sales contract, which election was entirely inconsistent with the premise that plaintiff had any right to hold Miller liable for the conversion resulting from his wrongful purchase of the hogs from Reuter. In the absence of the extension agreement plaintiff had the right to look to Miller for damages to the extent of the value of the 10 hogs purchased by him, and also to enforce liability against Reuter to recover the entire amount due under the contract, and there would be nothing inconsistent with an attempt on plaintiff's part to hold either one or the other liable before seeking to enforce liability against the other. The extension agreement, however, effectively prevented plaintiff from proceeding against Miller so long as such extension agreement was legally binding on plaintiff.

The question of election of inconsistent remedies by a vendor under a conditional sales contract is discussed in 47 Am. Jur., Sales, p. 104, sec. 896, wherein it is stated:

"Where more than one remedy for the enforcement of a particular right actually exists, and such remedies are inconsistent, the pursuit of one by a conditional vendor with knowledge of the facts is in law a waiver of the right to pursue the other inconsistent remedy."

On this point, see also 47 Am. Jur., Sales, p. 183, sec. 970.

While the facts in the case of *Geroy v. Upper* (1947), 182 Or. 535, 187 Pac. (2d) 662, 174 A. L. R. 1355, are not at all in point with those in the case at bar, nevertheless, the statement made by the Oregon court in its opinion therein, which attempts to define a test to determine whether the seller under a conditional sales contract has waived a default by the buyer, is pertinent. Such test is stated as follows (182 Or. 542, 187 Pac. (2d) 665):

"It is said that no general rule can be laid down with regard to what constitutes waiver by a seller in such cases, but that waiver may be inferred whenever the conduct of the seller is inconsistent with the idea that he still expects to enforce a return of the property if the conditions are not performed."

Paraphrasing the above quotation, plaintiff's action in entering into the extension agreement with Reuter was inconsistent with the idea that plaintiff still expected to enforce any claim against Miller either for the return of the 10 hogs, or for damages for the conversion thereof.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.