Argued December 3, 1974, reversed and remanded January 7, 1975

# PENDLETON GRAIN GROWERS, INC.,
## *Respondent, v.*
# SUNBEST CORPORATION ET AL, *Appellants.*

**530 P2d 82**

*Rustin A. Brewer,* Hermiston, argued the cause and filed the brief for appellants.

*Donald G. Morrison,* Hermiston, argued the cause and filed the brief for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, BRYSON and SLOPER, Justices.

TONGUE, J.

This is a suit in equity to foreclose a farm materials lien under ORS 87.292 *et seq.* The trial court awarded plaintiff a judgment against some of the defendants for $3,492.84, plus interest. Those defendants appeal, contending that the lien was invalid for various reasons.

*The facts.*

In the fall of 1971 plaintiff sold seed oats to defendant Sunbest Corporation to be planted that fall as a cover crop on land in Umatilla County owned by Juniper Ltd. Partnership and being farmed by Sunbest. Plaintiff filed a lien with the county clerk of Umatilla County on October 13, 1971, which was recorded in the "Liens upon Chattels Record."

Sunbest then ceased doing business. In January 1972, defendants Aldrich, Robertson and Zabransky, a partnership doing business as ARZ, took possession of the land and then planted potatoes and hay.

By letter dated March 2, 1972, plaintiff wrote to the owner of the land that it had filed a "seed lien against

the 1972 crops"; that it would "wait for payment until the crop is harvested"; and that it had "already informed your new lessees, ARZ, of this lien * * *." A copy of that letter was mailed to ARZ.

At the time of trial, on December 17, 1973, the writer of that letter, a Mr. Caplinger, testified that when he wrote it he "had it in my mind that I had talked to Mr. Aldrich previously, the prior fall," and "had a recollection at that time or wouldn't have written it in the letter," but that "[A]t this time I don't have a clear recollection now of talking to him * * *." Mr. Aldrich, of ARZ, when called as an adverse witness by the plaintiff, admitted receiving a copy of the letter, but was not asked whether Mr. Caplinger had previously talked with him about the lien.

The first cutting of hay was harvested by ARZ in June 1972 and a second cutting was harvested in August. The potatoes were harvested in October. All of the hay and potatoes were sold by ARZ. Payment for the hay was received by ARZ between June 1972 and May 1973 and payment for the potatoes was received between November 1972 and April 1973.

1. *The application of the farm labor, service or materials lien provided by ORS 87.294.*

ORS 87.294 provides:

"(1) Any person furnishing labor, service or materials to another upon any farmland, range, ranch or orchard to aid the growing or harvesting of crops or the raising of livestock thereon shall have a lien upon such crops or animals. The lien shall be the contract price for such labor, service or materials, or for the reasonable value thereof if there is no contract. The lien shall attach to the crop or animals from the date of commencement of the furnishing of labor, service or materials.

"(2) Except as provided in ORS 87.740, the lien shall attach to the crop, animals or the proceeds of the sale of the crop or animals in the possession of the *purchaser, agent, broker, cooperative agency or other person at the time such person is notified of the filing of the lien by delivery to him of a true copy thereof;* if

"(a) Prior to the filing of the lien, the crop, animals or any part thereof is sold; or

"(b) Prior to the filing of the lien possession of the crop, animals or any part thereof is delivered to a purchaser, agent, broker, cooperative agency or other person to be sold or otherwise disposed of.

"(3) Except as provided in ORS 87.740, the lien shall also attach to proceeds of the crop or animals coming into the possession of *such person* after *notification* of the filing of the lien." (Emphasis added)

Plaintiff contends that it is entitled to a lien under the provisions of ORS 87.294 (3). It contends that ARZ is subject to the terms of subsection (3) despite the fact that it was the farmer engaged in growing and harvesting the crops which plaintiff claims to be subject to the lien. In support of this contention plaintiff points out that the words "such person," as used in subsection (3) to describe those subject to the provisions of that subsection, refers to the term "purchaser, agent, broker, cooperative agent or other person," as used in subsection (2) to describe those subject to the provisions of that subsection, and that the term "other person" is sufficiently "broad" so as to include the farmer engaged in growing or harvesting the crop.

Defendant ARZ contends, however, that "the group" referred to in subsection (2) includes "purchasers, agents, brokers, cooperative agencies" and "other per-

sons" and that in construing the term "other person" the doctrine of "ejusdem generis" applies. As a result, it contends that the farmer who grows or harvests the crop, not being of the same "class" as that described by the terms "purchaser, agent, broker, cooperative agency," was not intended by the legislature to be included within the class of persons subject to the lien provided by subsection (2).

It may be that defendant ARZ is correct in its contention that neither the term "other person" in subsection (2) nor the term "such person" in subsection (3) was intended to include the farmer engaged in growing and harvesting the crop subject to the liens provided by those subsections. It does not necessarily follow, however, that the farmer is not subject to a lien under the provisions of subsection (1).

As we read ORS 87.294 in its entirety, it would appear that the legislature may well have intended that under the provisions of subsection (1) a person who furnishes labor, services or materials to a farmer in accordance with those provisions is entitled to a lien against the farmer upon the filing and recording of the lien, without further notice, and that the provisions of subsection (2) for notice by delivery of a true copy of the lien were intended to be applicable as requirements to be satisfied in order to make such a lien enforceable against a "purchaser, agent, broker, cooperative agency or other person."

Because no such contention was made in the case and because the lien is invalid for another reason, we need not decide that question. For the same reasons, we need not decide whether defendant ARZ is correct in its further contention that plaintiff is not entitled

to a lien against it under subsection (3) because the requirement of "notification" in that subsection is the same as that required under subsection (2), under which there must be "delivery to [it] of a true copy" of the lien, which was not done in this case.

2. *The effect of recording plaintiff's lien in the wrong records.*

As previously stated, this lien, filed by plaintiff with the county clerk, was recorded in the Chattels Record, instead of the Mechanic Liens Record as required by ORS 87.305 and 87.010.

The courts are divided upon the question whether the failure to correctly record a lien after it has been properly filed will invalidate the lien. Many courts hold that when one who is otherwise entitled to the protection of a lien files it with the proper office he will be protected against the intervening rights of third persons even though the recording officer then fails to record it or records it improperly. See Annot., 70 ALR 595 (1931). Many other courts hold that the consequences of the failure on the part of the recording officer to properly record a lien must be suffered by the person seeking to protect himself, under the recording acts, against the intervening rights of third persons. Annot., 70 ALR, *supra* at 602-604.

■ We believe that the latter view is more consistent with the purpose of recording acts to give notice to persons who subsequently have occasion to deal with property subject to liens. This does not mean that a person who would otherwise be entitled to the protection of a lien is left without a remedy because the county and its officers who are responsible for the proper filing of liens, together with their bondsmen, may well be re-

sponsible for damages resulting from the failure to properly record a lien, assuming that the lien was otherwise valid and enforceable. Cf. *Spaulding Log. Co. v. Ryckman,* 139 Or 230, 234, 236, 6 P2d 25 (1932).

■■ We recognize that labor and mechanic's liens statutes are to be liberally construed for the protection of those who perform labor and provide materials. *Drake Lumber Co. v. Lindquist,* 179 Or 402, 412, 170 P2d 712 (1946). Nevertheless, it is equally well established that anyone claiming a lien by virtue of a statute must show substantial compliance with its provisions and bring himself within its terms. *Drake Lumber Co. v. Lindquist, supra* at 413.

In *Spaulding Log. Co. v. Ryckman, supra* at 236-237, we held that a delay in the recording of a lien which had been timely filed did not invalidate it under the facts of that case because otherwise a lien filed on the last hour of the last day for filing would be invalidated if not recorded until the next morning. In that case, however, the lien was recorded in the proper record and it does not appear that during the period of the delay any third parties intervened so as to be subject to possible prejudice as a result of that delay.

■ In this case, however, the lien was never recorded in the proper record and defendant ARZ took possession of the land and incurred expenses in the planting of crops on the land before it was notified of the lien by copy of the letter dated March 2, 1972. Under these circumstances, and for these reasons, we hold that the lien was invalid as against defendant ARZ.

Having held that plaintiff's lien is invalid against defendant ARZ, we need not consider whether or not it was also invalid for the additional reasons urged by de-

fendants.[1] This case is therefore remanded for further proceedings not inconsistent with this opinion, including further proceedings against defendant Sunbest Corporation, in the event that plaintiff should so desire. Cf. *Paulk v. Van Cleve et al*, 210 Or 218, 225, 309 P2d 176 (1957).

Reversed and remanded.

[1] The further contention by defendant that plaintiff's lien was invalid for failure to give notice as provided by ORS 87.-020 (3) was also an issue in another case decided this day in an opinion which rejected that contention. See Oregon Broadcasting Company v. Grecian Health Spa of Medford, Inc., 271 Or 31, 530 P2d 80 (1975).