McGREGOR COMPANY,
*Appellant - Cross-Respondent,*

*v.*

HERITAGE et al,
*Defendants,*
OREGON POTATO, INC., et al,
*Respondents - Cross-Respondents,*
DUNN,
*Respondent - Cross-Appellant.*

(No. E 21,987, CA 15357)

620 P2d 488

Milo Pope, Mt. Vernon, argued the cause for appellant - cross-respondent. With him on the briefs were Joseph N. Hershberger, Hermiston, and Kilpatricks & Pope, Mt. Vernon.

Leeroy O. Ehlers, Pendleton, argued the cause and filed the briefs for respondents - cross-respondents Oregon Potato, Inc., and Brewer Farms, Inc.

No appearance for respondent - cross-respondent 3-D Sales, Inc.

Garry L. Reynolds, Hermiston, argued the cause for respondent - cross-appellant. With him on the brief was Morrison & Reynolds, Hermiston.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

Plaintiff commenced this proceeding to foreclose three agricultural service liens against the proceeds of a potato crop grown by defendant Heritage Farms, Inc. Some of the other defendants filed counterclaims to foreclose liens claimed by them. The trial court ruled that: (1) plaintiff's liens were invalid; (2) defendant Oregon Potato, Inc. (OPI) had a valid possessory lien in the amount of $126,124.77, which had first priority; (3) OPI had a valid perfected security interest for rental in the amount of $7,750, which had second priority; (4) OPI had a valid agricultural services lien for $13,370.92, which had third priority; (5) defendant 3-D Sales had a valid agricultural services lien for $12,567, equal in priority to the other agricultural services liens; (6) defendant Dunn (assignee of defendant Pendleton Banking Co.) had a valid perfected security interest under ORS chapter 79, in the amount of $43,500, subordinate to all other liens. Based on those determinations, a decree was entered.

Plaintiff appeals, contending its lien is valid and has priority over any possessory lien claimed by OPI; defendant Dunn cross-appeals, contending that 3-D Sales' lien did not attach to the proceeds of the crop and that any possessory lien OPI may have had was lost by transferring it to a third party. We modify the decree.

### THE FACTS

In late 1977 or early 1978 defendant John Heritage decided to plant a crop of potatoes in the Boardman area of Umatilla County. He incorporated under the name Heritage Farms, Inc., on February 15, 1978, as the sole incorporator, and he and his wife were the only directors. Before incorporating, Heritage began arranging financing necessary to plant, irrigate, harvest and market the crop. He obtained from Pendleton Banking Company an open line of credit, and on February 14, 1978, the bank advanced him $40,000, in connection with which a loan and security agreement was executed by the new corporation on February 16, 1978. That security interest was perfected, in accordance with ORS 79.3030, by filing a financing statement on February 21, 1978, which claimed a security interest in the proceeds from the potato crop as well as the

crop itself. A second advance of $3,500 was made on July 11, 1978. The bank assigned its secured claim to Dunn, and the validity of that lien is not in issue here; however, the ability to realize on the security depends upon the issues discussed below.

On February 17, 1978, Heritage Farms, Inc. purchased seed potatoes from defendant 3-D Sales, Inc. for $12,567 and, claiming a lien for agricultural services under ORS 87.226,[1] 3-D Sales filed a notice of claim of lien in Umatilla County pursuant to ORS 87.242[2] on March 7,

---

[1] ORS 87.226 provides:

"(1) A person who performs labor, supplies materials or provides services on farmland, range, ranch, orchard or in that person's place of business to aid the growing or harvesting of crops or the raising of animals has a lien upon the crops or animals for the reasonable or agreed charges for his labor, materials or services.

"* * * * *

"(3) As used in this section:

"(a) 'Growing and harvesting' includes tilling, sowing, planting, cultivating, irrigating, pruning, thinning, fertilizing, spraying, dusting, cutting, harvesting, reaping, threshing, gathering, transporting, securing or otherwise performing or furnishing labor, service or materials to aid the production of any agricultural crop.

"(b) 'Materials' includes seed, fertilizer, pesticide and other products used in agricultural practice to aid the growing or harvesting of crops, * * *.

"(c) 'Performs labor or provides services' includes personal labor and the use of machinery, equipment or animals rendered by the lien claimant or by his agent, employe or subcontractor.

"* * * * *"

[2] ORS 87.242 provides:

"(1) A person claiming a lien created by ORS 87.216 to 87.232 shall file a written notice of claim of lien with the recording officer of the county in which the lien debtor resides, or, if the lien debtor is a business, the county in which the lien debtor has its principal place of business not later than 60 days after the close of the furnishing of the labor, services or materials.

"(2) The notice of claim of lien required under subsection (1) of this section shall be a statement in writing verified by the oath of the lien claimant and must contain:

"(a) A true statement of the lien claimant's demand after deducting all credits and offsets;

"(b) The name of the owner of the chattel to be charged with the lien;

"(c) A description of the labor services or materials provided by the lien claimant for the benefit of the owner of the chattel to be charged with the lien;

1978, and gave timely notice of its filing pursuant to ORS 87.252.[3]

Also in February, 1978, Heritage contacted plaintiff to purchase chemicals for the potato crop; during the negotiations, Heritage presented plaintiff with a personal financial statement dated February 15, 1978. Heritage did not mention that he was acting on behalf of a corporation, but the lien of 3-D Sales for the seed potatoes was shown. Plaintiff agreed to sell Heritage the necessary chemicals; thereafter it supplied chemicals on three different occasions, for each of which notices of claim of lien were timely filed pursuant to ORS 87.242: on May 11, 1978, for $16,804.69; on July 10, 1978, for $6,400.04, and on August 11, 1978, for $8958.50.

The first claim of lien named "Heritage Farms, c/o John Heritage" as the lien debtor, and the remaining two named "John Heritage doing business as Heritage Farms." The actual lien debtor was Heritage Farms, Inc. Plaintiff served Heritage with notice of these filings as, and within the time, required by ORS 87.252. In letters dated July 13, 17 and August 4, 1978, plaintiff informed OPI of its lien claims and included copies of its lien notices pursuant to ORS 87.236,[4] to the end that its liens attach to the proceeds of the potato crop.

---

"(d) A description of the chattel to be charged with the lien sufficient for identification;

"(e) A statement that the amount claimed is a true and bona fide existing debt as of the date of the filing of notice of claim of lien;

"(f) The date on which payment was due to the lien claimant for his labor, services of materials; and

"(g) The terms of extended payment, if any.

"(3) If the person entitled to a lien under ORS 87.216 to 87.232 does not properly file notice of claim of lien within the time required by subsection (1) of this section, he waives his right to the lien.'

[3] ORS 87.252 provides:

'When a lien claimant files a notice of claim of lien as required by ORS 87.242, he shall send forthwith a copy of the notice to the owner of the chattel to be charged with the lien by registered or certified mail sent to him at his last-known address."

[4] ORS 87.236 provides:

Meanwhile, in early February, 1978, Heritage approached OPI for the purpose of leasing an "irrigation circle" — a plot of farmland irrigated by sprayers on an arm which rotates from a central pivot. A formal lease, which required OPI to furnish the irrigation equipment and water, was executed on March 8, 1978; Heritage Farms, Inc. was the lessee. At that time $7,750, one-half of the total rent of $15,500, was paid; the balance was due November 1, 1978. After the crop had been planted Heritage Farms, Inc. entered into a separate contract with OPI, dated July 28, 1978, under which OPI was to "harvest, haul, process and market" the potatoes. Under that agreement, OPI was authorized to deduct from the proceeds of sale all sums owing to it for the stated services, and to remit the balance to Heritage Farms, Inc. In addition, OPI agreed to buy the cull potatoes. On the same date a security agreement was executed securing "payment of all obligations" of Heritage Farms, Inc. to OPI. That security interest was duly perfected pursuant to ORS 79.3030 by filing a financing statement with the Umatilla County clerk on August 1, 1978, covering, as collateral, the crops, and proceeds from the crops, then growing or to be planted on the land comprising the irrigation circle. In addition OPI

---

"(1) The liens created by ORS 87.216 to 87.232 attach to the chattels described in those sections.

"(2) The liens created by ORS 87.226 and 87.232 shall also attach to the proceeds of the sale of the chattels subject to those liens if:

"(a) Prior to the filing of the notice of claim of lien, the chattels or any part thereof are sold or delivered to an agent, broker, cooperative agency or other person to be sold or otherwise disposed of; and

"(b) At the time the purchaser, agent, broker, cooperative agency or other person is notified of the filing of the claim of lien by delivery to him of a true copy thereof, the proceeds that were received or will be received from the sale or other disposal of the chattels have not been delivered to the owner of the chattels.

"(3) When a lien created by ORS 87.226, and 87.232 attaches to the proceeds of the sale of chattels under subsection (2) of this section, a purchaser, agent, broker, cooperative agency or other person shall not deliver the proceeds or that portion of the proceeds equal to the amount of the lien claim to the owner until:

"(a) The time specified by ORS 87.266 during which a suit to foreclose the lien must be commenced elapses; or

"(b) A court orders the delivery of the proceeds; or

"(c) A certificate is recorded under ORS 87.346 declaring that the claim of lien is discharged."

later filed two notices of claim of lien pursuant to ORS 87.242, claiming liens for agricultural services. The first, in the amount of $33,524.49, was for furnishing irrigation water, equipment and services, harvesting the potato crop, and transporting the crop to the processing plant, and was filed on September 25, 1978. The second, filed October 6, 1978, was in the amount of $105,999.20, for "scaling, processing, packing and selling" the potatoes. OPI gave timely notice pursuant to ORS 87.252 of the filing of these lien claims.

With the exception of the dealings with plaintiff, all of the documents between Heritage and the parties to this proceeding show Heritage acting as agent for Heritage Farms, Inc.

Harvest of the potato crop began in August, 1978, and the proceeds from the sale, $166,640.19, (which does not include the value of the cull potatoes — $16,044.43 — purchased by OPI), were retained by OPI and deposited in an interest bearing account. Possession and control of this account was later transferred to Brewer Farms, Inc., for reasons hereinafter discussed.

### PLAINTIFF'S LIEN CLAIM

Plaintiff claims three agricultural services liens pursuant to ORS 87.226 (*see* note 1, *supra*) against the potato crop and its proceeds. ORS 87.236 (*see* note 4, *supra*). The trial court disallowed them on the ground that plaintiff had failed to comply with ORS 87.242(2)(b) by not naming Heritage Farms, Inc. as the "owner of the chattel to be charged with the lien." For reasons hereinafter discussed, we conclude that the notices of claim of lien substantially complied with the statute and that plaintiff's liens are valid.

Although it is true that one claiming a statutory lien must show substantial compliance with the statute and bring himself within its terms, *Pendleton Grain Gr. v. Sunset Corp.,* 271 Or 48, 54, 530 P2d 82 (1975); *Coast Engine & Machine Works v. Barbee,* 130 Or 159, 163, 279 P 264 (1929), it is also true that in applying that rule we should keep in mind that the purpose of recording acts is to give notice to persons who subsequently deal with the

property of the existence, nature and extent of the lien. *Pendleton Grain Gr. v. Sunset Corp., supra,* 271 Or at 53.

In light of that purpose, it has been held that the description of personal property against which the lien is claimed need not be an exact or faultless description as long as the description is sufficient to identify the property, *Coast Engine & Machine Works v. Barbee, supra,* at 163; *Fletcher v. Southern Oregon Truck Co.,* 128 Or 353, 273 P 329 (1929), and that a mistake in the amount claimed in the lien statement will not render the whole lien void when it is evident that no fraud was intended and no prejudice resulted to the defendant. *Mercer Steel v. Park Construction Co.,* 242 Or 596, 600, 411 P2d 262 (1966). Similarly, where a materialman misnamed the contractor to whom he had delivered stone for use in the defendant owner's project, the court upheld the lien claim. *Osburn v. Logus,* 28 Or 302, 37 P 456 (1894). In *Spaulding Log. Co. v. Ryckman,* 139 Or 230, 6 P2d 25 (1931), the court held that the recording of a lien one day late did not invalidate the lien where it appeared that no third parties were prejudiced by the delay.

It is always troublesome when the claimant has not complied strictly with the statutory requirements, but it is apparent from the foregoing cases that substantial compliance in good faith is sufficient if no prejudice is shown. Here there is no contention that the claims of lien did not properly describe the property against which they were asserted, or that the amounts claimed were inaccurate, or that they were not filed in the proper place or within the time required. Nor is there any claim of prejudice; all of the other parties concede they knew of plaintiff's lien claims, and the record discloses that plaintiff sent copies of its claims of lien to OPI prior to the harvest of the crops. None of the parties questions the good faith of plaintiff in its naming of the owner, and defendant Heritage testified that so far as he was concerned there was no difference between John Heritage, the individual, and Heritage Farms, Inc. As a matter of law, the corporation, having accepted the benefits of the contract with plaintiff, is bound thereby. *Phillips v. Colfax Company, Inc.,* 195 Or 285, 243 P2d 276, 245 P2d 898 (1952); *Rae v. Heilig Theatre Co.,* 94 Or 408, 185 P 909

(1919). We have no doubt that the lien is valid as between plaintiff and Heritage Farms, Inc.

Finally, there is no contention or evidence that the lien claims were indexed in a manner which would not have permitted one looking for lien claims against Heritage Farms, Inc., to find those filed by plaintiff in the ordinary course of a routine records search. We do not mean to minimize the importance of properly naming the owner, *but* at some point the deviation from strict compliance with that requirement becomes *de minimus,* and we believe that is the case here.

Under all of the circumstances, we conclude that plaintiff complied substantially with the statutory requirements, and that its lien claims were valid. Their relative priority is discussed below.

## *LIEN OF 3-D SALES*

■ The trial court concluded that defendant 3-D Sales had an agricultural services lien under ORS 87.226 against the potato crop and its proceeds. On appeal defendant Dunn contends the trial court erred in that determination to the extent that it recognized a lien on the crop proceeds because 3-D Sales filed its lien claim prior to the sale or delivery of the potatoes for sale, and therefore did not fulfill the requirements of ORS 87.236(2), which provides:

"The liens created by ORS 87.226 and 87.232 shall also attach to the proceeds of the sale of the chattels subject to those liens if:

"(a) Prior to the filing of the notice of claim of lien, the chattels or any part thereof are sold or delivered to an agent, broker, cooperative agency or other person to be sold or otherwise disposed of; and

"(b) At the time the purchaser, agent, broker, cooperative agency or other person is notified of the filing of the claim of lien by delivery to him of a true copy thereof, the proceeds that were received or will be received from the sale or other disposal of the chattels have not been delivered to the owner of the chattels."

It is clear that 3-D Sales' claim of lien was filed March 7, prior to the sale or delivery of the crop to OPI, but we think Dunn reads the statute too literally and in a vacuum. Under ORS 87.242, 3-D Sales was required to file

its lien claim "not later than 60 days after the close of furnishing * * *" of the seed potatoes. Having done so, it had a perfected agricultural services lien under ORS 87.226, and anyone purchasing the potato crop took it subject to that lien. As we read ORS 87.236, it provides for the situation where the crop is sold or delivered to an agent or broker prior to the timely filing of the claim of lien, in which case the sale or delivery would be free of the lien but for that section, which permits the subsequent, but timely, filing to be effective against the proceeds by giving the notice required by ORS 87.236(2)(b). In other words, it provides a shuttle service for those who failed to board the vessel before it left the dock.

*Paulk v. Van Cleve et al,* 210 Or 218, 309 P2d 176 (1957), on which Dunn relies, is not contrary to that conclusion, although there is language in the opinion that, when taken out of context, tends to support Dunn. That case involved the forerunner of ORS 87.236, but the court pointed out that there was nothing to indicate that plaintiff's lien had been filed before the defendant dealers purchased or took possession of the crop, and therefore the court could not say that defendants took the crop subject to the lien. Further, there was no claim that plaintiff gave the notice to defendant, which was required if the claim of lien was filed after the crop was sold.

We agree with the trial court's conclusion that 3-D Sales had a valid agricultural lien under ORS 87.226.

### OPI'S LIEN CLAIMS

Defendant OPI relies primarily upon a common law possessory factor's lien for harvesting, hauling, scaling, processing, packing and selling the potato crop, in the aggregate amount of $126,124.77. However, OPI, not wanting to be half safe, also filed two claims of lien for agricultural services pursuant to ORS 87.226, the first of which was filed September 25, 1978, for furnishing irrigation water, equipment and services ($13,370.92), harvesting potato crop ($12,585.98) and transportating potatoes to processing plant ($7,551.59), for a total of $33,508.49; the second such lien was filed October 6, 1978, and covered scaling, processing, packing and selling the potato crop, for a total claim of $105,999.20. The latter claim of lien has

been abandoned in this court, and we think correctly because it covers some items which do not appear to be lienable under ORS 87.226 and are not segregated. *See Lambert v. Stupek,* 237 Or 498, 392 P2d 255 (1964).

■　The arguments with respect to the common law factor's lien are scant, largely because its source is somewhat obscure and its reach amorphous. It is pointed out, however, that the court in *Nickelsen v. Kilbuck,* 145 Or 203, 26 P2d 828 (1933), recognized the viability in this state of a common law factor's lien and, in general, its priority over all other liens but for the statutory preference given to the farm laborer's lien there claimed. In *Nickelsen,* there was no issue with respect to what charges came within the factor's lien, the claim being that the defendant had an interest in "said fruit to the extent of said defendant's advances and charges as a factor in handling and marketing said fruit * * *."

We feel constrained to recognize the continued existence of a common law factor's lien, and its priority, not only because of *Nickelsen,* but for two other reasons. First, the Uniform Commercial Code (ORS 79.3100)[5] recognizes the possibility of such pre-code possessory liens, and their priority. Second, because expenses of voluntary sale of a crop do not appear to be lienable by any statute, as a pragmatic matter it would not be possible to employ a broker, commission agent or factor to sell crops already subject to liens without recognizing a lien for commissions and costs of sale with preference over the existing liens. The result would be a forced sale on foreclosure, which might be to the detriment of all concerned.

■　The question remains, however, as to what services or expenditures the lien attaches. The Restatement of Agency (Second), § 464, states:

"Unless he undertakes duties inconsistent with such a right or otherwise agrees that it is not to exist:

---

[5] ORS 79.3100 provides:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

*Cf.* White & Summers, Uniform Commercial Code, § 22-1.

"* * * * *

"(b) a factor, banker, or attorney-at-law has the further right to retain possession of money, goods, or documents until he is paid the amount due him upon the general balance of accounts *created by transactions conducted by him as such factor,* banker or attorney;

"* * * * * " (Emphasis added.)

To the extent, then, that OPI's lien claim is for services or expenditures as a factor, it would have a lien. Typically, a factor is one who sells the goods of his principal, which are in his possession, for a commission; a factor may sell in his own name without disclosing the principal. *Holleman v. Taylor,* 200 NC 618, 158 SE 88 (1931); *Kellogg v. Costello and others,* 93 Wisc 232, 67 NW 24 (1896). Although a factor may perform some labor on the goods while in his possession prior to sale (such as convert cream to butter) without losing his status as a factor, it does not follow that every expenditure made by a factor comes within a factor's functions entitling him to assert a lien for such services. The lien covers all charges based on the factorship relation, but cannot be stretched so as to protect charges outside that relationship. Wharton, Commentaries on Agency and Agents, § 768 (Kay and Brother, 1876).

■　　　It is difficult to ascertain with any degree of certainty where the line is, or should be, drawn, but this much seems reasonably clear: scaling, processing, packing and selling the crop, all of which was done after OPI obtained possession of the potatoes and was necessary to be done in order to sell the potatoes, ought to come within the factor's lien, because those services and expenditures are not otherwise lienable. It also seems clear that harvesting the potatoes should not come within the factor's lien any more than should planting and growing. Whether transportation of the potatoes should or should not come within the factor's lien is more problematical. It would seem reasonable, however, to conclude that because both harvesting and transportation of the crop are lienable by statute (ORS 87.226, note 1, *supra*) and the remaining services for which this lien is claimed are not, the line should be drawn where the statutory lien ends. We reach this conclusion without

regard to what the rule might have been at common law.[6] Not only is that line reasonable from the standpoint of lienability, but it is also an equitable cutoff of the factor's lien rights because the factor's possessory lien has priority over all other liens (except, as in *Nickelsen,* for farm labor), whereas the ORS 87.226 agricultural services liens share equally with each other, regardless of the time of filing.

Accordingly, we hold that OPI had a valid possessory factor's lien on the crop proceeds for scaling, processing, packing and selling the potatoes, the amount of which we can determine from the filed claim of lien (covering the same items) to be $105,999.20.[7] OPI, then, has a prior lien in that amount unless it lost its lien by virtue of the facts which follow.

■   It developed at the time of trial that shortly prior thereto OPI had sold all of its capital stock to another corporation. At the time of sale Brewer Company was the sole shareholder of OPI. Although the record is not as clear as it should be, it does not appear to be disputed that prior to the stock sale OPI's claims of lien, and the possession of the proceeds of sale of the crop, were assigned and transferred to Brewer and were not assets of OPI at the time of the sale of stock. Thereafter, Brewer Company caused to be incorporated Brewer Farms, Inc., one of the purposes of which was to prosecute the pending suit against Heritage Farms, Inc. for the amount due OPI. The money securing the claims was deposited with an Oregon bank, and the parties were advised of the existence of the fund, but not of

---

[6] Among other things, the entire concept of factoring as it exists today is substantially different from what it was at early common law. *See,* Whitney, *The Law of Modern Commercial Practices,* § 638. In addition, most liens today are statutory and may overlap services or expenditures which might have been rationalized at common law as falling within the factorship relation because they were rendered or incurred in anticipation of that relationship. *See* Wharton, Commentaries on Agency & Agents, § 767-68 (Kay & Brother, 1876). To the extent, then, that a factor may protect himself by perfecting a statutory lien, the common law possessory lien should be diminished. We see no reason to grant a factor a preferred position unless the circumstances dictate a practical necessity for doing so.

[7] If we were not able to segregate the items not subject to the factor's lien, presumably we would be compelled to hold the entire lien claim invalid just as we would if the lien were of statutory origin. *See Lambert v. Stupek,* 237 Or 498, 392 P2d 255 (1964).

the assignment. It is contended that by virtue of OPI's assignment of all of its interest in its lien claims, and relinquishment of possession of the funds, it lost all possessory lien rights as to third parties, citing *Yellow Mfg. Accept. Corp. v. Bristol,* 193 Or 24, 236 P2d 939 (1951). In that case, however, the possessory lien claimant returned the collateral to the debtor, so that case is not controlling here.

This is not a case where the security in which the claimant asserts a possessory lien is transferred to a third party and separated from the claim. Rather, the claim was assigned and at the same time the security in possession of the assignor was transferred along with it. No Oregon cases have been cited to us, and we have found none, dealing with the question before us, and there is a split of authority in other jurisdictions. *See National Bond & Investment Co. v. Midwest Finance Co.,* 156 Kan 531, 134 P2d 639 (1943); *Gardner v. Le Fevre,* 180 Mich 219, 146 NW 653, AC' 16A 618 (1914), which allow assignment of a possessory lien claim as a chose in action. *Contra: Rosencranz v. Swofford Bros. Dry Goods Co.* 175 Mo 518, 75 SW 445, 97 AS 609 (1903); *Glascock v. Lemp,* 26 Ind App 175, 59 NE 342 (1901), which treat the possessory lien as a personal right of the one performing the services on the chattel, and not assignable. The Restatement of Security, § 67(1), states the rule to be:

> "Subject to the terms of the bailment where a claim, except that of an attorney, secured by a possessory lien is effectively assigned and the assignee as an incident of the assignment obtains possession of the chattel or the assignor or a third person has possession for him, the lien also is effectively assigned."

We see no reason in this case to draw a hard line; lien foreclosures are typically equitable in nature and we believe flexibility is desirable. We can perceive of circumstances under which an assignment of a claim, together with a transfer of possession of a chattel securing it, or proceeds of its sale, would create prejudice either to the debtor or to other lien claimants, or to both. When and if that situation should present itself, the court should be free to decide that the possessory lien has been lost as a matter of equity, not as a hard and fast rule. In the present case

neither the debtor nor the other lien claimants contend that they have been prejudiced in any way by the assignment, and we perceive of no prejudice. The funds remained in the state of Oregon and all of the claimants were advised where they were deposited; further, all of the claimants were advised of the assignment at the time of trial, at which time Brewer Farms, Inc. was added as a party defendant.

We conclude, therefore, that the possessory lien rights were not lost by virtue of the assignment of the claims and transfer of possession of the funds to the transferee.

■ Although we have concluded that OPI's lien claims for harvesting and transporting the crop do not fall within its possessory factor's lien, those items do come under the agricultural services lien for which OPI filed a claim of lien, along with a claim for irrigation water, equipment and services. We see no reason, on *de novo* review, not to recognize them (a total of $33,508.49) along with the other agricultural services liens under ORS 87.226.

One further point should be mentioned, although it is not argued by any of the parties, perhaps because there is no dispute. OPI received the sum of $166,640.19 from the sale of potatoes; in addition it purchased cull potatoes in the amount of $16,044.43. Accordingly, the total proceeds from the potato crop were $182.684.62, but OPI deposited only $166,640.19 in the "proceeds" account. For purposes of distributing funds pursuant to the modified decree, the sum of $182,684.62 is to be considered the proceeds of sale, together with any interest which would have been earned on that entire amount had all of it been so deposited initially.

### SUMMARY

Based upon the foregoing resolution of the issues presented on appeal, the decree is modified to provide for the claims to be paid in accordance with the following order of priority out of the proceeds of sale:

1. Possessory factor's lien of Brewer Farms, Inc., assignee of OPI, in the amount of $105,999.20 for scaling, processing, packing and selling the potato crop;

2. OPI's security interest for the remaining one-half of the rent under the lease of the irrigation circle in the amount of $7,750;[8]

3. All agricultural services liens have equal[9] priority: The McGregor Company, $24,063; Brewer Farms, Inc., assignee of OPI, $33,508.49; 3-D Sales, $12,567.

4. Dunn, assignee of the Pendleton Banking Company, $43,500.

Affirmed as modified, and remanded for the entry of a new decree consistent with this opinion.

---

[8] The validity, amount and priority of that lien are not in dispute here.

[9] The equal priority of the agricultural services liens is not disputed. ORS 87.146(1)(b) provides:

"(1) Except as provided in subsection (2) of this section:

"(b) Liens created by ORS 87.216 to 87.232 have equal priority. When a decree is given foreclosing two or more liens created by ORS 87.216 to 87.232 upon the same chattel, the debts secured by those liens shall be satisfied pro rata out of the proceeds of the sale of the property."